# Kentucky Rock Asphalt Company et al. v. Milliner et al.

(Decided May 6, 1930.)

FAUREST & FAUREST and C. O. CARRIER for appellants.

J. M. CAMPBELL and HUMPHREY, CRAWFORD & MIDDLETON for appellee James Milliner.

J. T. BASHAM and L. A. FAUREST for appellees J. Dan Keller and United Rock Asphalt Company.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment quieting appellees' title to a tract of land in Grayson county, containing about 40 acres, and adjudging that appellants had no interest in the land.

In the year 1887, George W. Milliner executed and delivered to Jeremiah Jeffries the following instrument:

"This indenture made and entered into this ninth day of November 1887 by and between George W. Milliner of Grayson County in the State of Kentucky, of the first part and Jeremiah Jeffries of Hardin County, in the State of Kentucky of the second part, witnesseth that the party of the first part, in consideration of the sum of Five Dollars, cash in hand paid, and of the agreement of the said second

party to pay the royalty hereinafter referred to, hereby grants and conveys to the said second party, all of his right, title and interest, in and to all deposits of oil, bitumen and their products found in, upon or under the following tract of land in the county of Grayson, in the State of Kentucky, to wit: Beginning at a black oak, the corner of Wm. Hacketts, thence in a southerly direction with said Hackett's line to Langley's line, thence with said line to hickory on Bossiers branch, thence with said branch to a stone, thence to beginning, containing eighty two and a half acres. To have and to hold to said second party his heirs and assigns forever with covenants of general warranty.

"This conveyance is made subject to the following conditions: First.—Nothing herein shall be deemed to convey to said second party any precious ores, and metals that may be found in upon or under the said land.

"2. Second.—The party of the second part shall be allowed at any time to enter upon said land or any part thereof and explore the same by boreing, digging or otherwise, and generally do all acts deemed necessary by him in order to fully explore said land in the search of oils, bitumen and their products and to this end and for this purpose he shall have unobstructed ingress and egress to and from all parts of said land and may use and occupy so much of said land as he may deem reasonably necessary from time to time to explore said land and develop and remove therefrom or refine thereon any of said oils, bitumen or their products, which he may find thereon or thereunder, provided however, he shall do no unnecessary damage to said portions of land as he may not reasonably require for the uses and purposes aforesaid.

"3. Third.—If said second party shall find on said land any oils, bitumen or their products in such quantity and value, that he shall proceed to remove the same for commercial purposes, then and in that event he shall pay the parties of the first part ten per centum of the net profits realized from the sale thereof, after deducting all costs and expenses connected therewith, including a reasonable compensation for his own services in connection therewith, payments of this royalty shall be made quarterly

from the time work is actively commenced on the production and sale of oils, bitumen and their products.

"4. Fourth.—If the party of the second part or his assigns shall cause an incorporated company to be organized to develop and operate the said property or any part of it, or for any particular purpose in connection therewith, then the said second party or his assigns or said company in lieu of paying the aforesaid royalty may issue and deliver to the said first party a proportionate amount of the capital of said company and shall not thereafter be required to pay any royalty whatever.

"5. Fifth.—Generally the said second party, his heirs and assigns, shall have and exercise in about and upon the land aforesaid all such rights, powers and privileges as are reasonably necessary to explore and develop the said land and remove therefrom with convenience and dispatch all oils, bitumen and their products found thereon or under, including the right to erect and maintain all such buildings, machinery and other structures as may be needed, including houses for the occupation of all persons employed thereon, and to build and maintain across and over the same all such roads, including railways and tramways, as he or they deem necessary or proper to provide proper transportation facilities for the products of said land. Witness the signatures of the parties of the first part, this the day and year first above written."

The instrument was first recorded in the office of the clerk of the Grayson county court on January 24, 1888. Thereafter the courthouse burned, and it was re-recorded on August 16, 1901. In the certificate of acknowledgment and also in the recording certificate the instrument is designated as a lease. In the written assignment from Jeremiah Jeffries to William L. Breyfogle the instrument is referred to as "contract or lease." By subsequent transfers and conveyances the rights which Jeffries acquired under the instrument passed to appellant, and the rights of George W. Milliner, the common grantor, passed to appellee James W. Milliner. The evidence discloses that at about the same time Jeffries procured from various landowners similar instruments covering several hundred acres of land, and that his agent assured the landowners that the property would be shortly

worked for asphalt or black rock. The suit was brought about 39 years after the execution of the original instrument by George Milliner, and in the meantime there had been no effort to develop the property.

In the case of Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S. W. 438, 439, 46 L. R. A. (N. S.) 672, the facts were these: The grantors conveyed to the grantees "the undivided seven-eights (⅞) of the minerals and timber, with the right of way to timber and minerals when the same are being mined and worked." In addition to the consideration of $1 the instrument provided:

"The grantor reserves one-eighth interest in the minerals and timber of said land, outside of the seven-eighths conveyed, and is to share with grantees, as above mentioned. That is to say, the grantor is to receive one-eighth of the net profits of all minerals and timber taken from said tract, so soon as mining operations commence, said grantor also reserving of the timber herein conveyed a sufficient quantity for mill, fuel, and fencing, for his own use on his farm."

The court held that the failure of the grantees for a period of 30 years to develop the property was, as a matter of law, an abandonment of their rights under the instrument. In reaching this conclusion, the court said:

"It will be noticed that Spencer conveyed to the grantees seven-eighths of the mineral and timber on the land, reserving to himself one-eighth, and that the only consideration Spencer was to receive for the conveyance of this large estate was one-eighth of the net profits of all minerals and timber taken by the grantees from the land. It is true there is a consideration of $1, acknowledged by Spencer; but this is a mere nominal consideration and entitled to no weight in determining the amount of the consideration that it was contemplated by the parties should be paid by the grantees for the valuable interests granted. The real and indeed only consideration was the obligation upon the part of the grantees to give to Spencer one-eighth of the profits. This was the only material inducement that could have influenced Spencer to enter into the contract.

While not doubting that the owner of land has a right to dispose of it or any severable interest therein as he pleases, and for what he pleases, and to take such consideration as he chooses to accept, whether it be great or small, or payable in cash or in installments or in royalties, it is nevertheless a matter of first importance, in the construction of contracts like this, to understand the real consideration to be paid for the property conveyed. In an attempt to ascertain whether a deed like this was intended by the parties to be a conveyance in fee simple, or only a contract or lease under which the grantees must begin operations within a reasonable time, there is no feature entitled to more weight than the one relating to the consideration and the manner of its payment. There is and should be a marked difference between the construction and effect of a conveyance of timber and minerals, or indeed any interest in land, for a stipulated consideration, payable in cash or in secured notes or in some other valuable property, and the construction and effect of a conveyance in consideration of a royalty or per cent., to be paid out of the income derived by the grantees from the property conveyed. In other words, if Spencer for a recited consideration of $1,000—assuming that to have been adequate—had conveyed to the grantees all the timber and minerals in the tract of land, he would have parted by this conveyance with all right, title, and interest in the timber and minerals, and no delay in the development of the property on the part of the grantees would have been conferred upon Spencer or any person claiming under him the right to forfeit the contract or to insist that it had been abandoned. Nor would any effort to convert such a conveyance into a license or lease be approved by the courts. Such a contract would be a fully executed instrument. Nothing would remain to be done by either of the parties. All the title and interest that Spencer had would have passed out of his control, and the grantees would have the right to do with the property as they pleased, or as any other owner of the whole estate would have the right to do with it. When the consideration has been fully satisfied, and the grantor has parted with his estate, the transaction between the parties is a closed incident. The grantor has no further interest or concern in the

property conveyed. But a very different situation is presented when the only consideration the grantor is to receive is a per cent. of the profits the grantee may realize from the development of the estate. Under such a contract the consideration is a continuing one, to be paid only by the labor of the grantee in the development of the property. The grantor has a continuing interest in the estate conveyed, the transaction between the parties is not a closed incident and the grantee is not at liberty to do with the property as he pleases. He cannot use or fail to use it to the prejudice of the grantor who has rights that must be respected.

"Looking now at the instrument in question, in connection with the situation of the parties, the circumstances surrounding them at the time it was executed, and the subsequent conduct of the grantees, it is obvious that it was an implied condition of the contract that the grantees should within a reasonable time begin operations so that the grantor might receive some consideration for the estate he had parted with. To adopt the view of this contract insisted on by counsel for appellant would be to place it absolutely and without limitation in the power of the grantees to hold the property for an indefinite time or forever without paying to the grantor anything whatever for the privilege. In other words, the grantor would be placed in the attitude of having conveyed to the grantees all the timber and minerals on seven-eighths of a large body of land, without receiving any consideration until it might suit the convenience or interest of the grantees to undertake the development of the property, and this they might delay for 10, 20, 50, or even 100 years. In the meantime, pending this inaction, the grantor would be deprived of the right to use or control the property conveyed or realize anything from it, as well as denied the right to dispose of it. We do not think any court should give to a contract like this such a construction as should place it in the power of the grantee, without any loss, outlay, or disadvantage, to take, keep and hold indefinitely valuable property rights in the manner attempted in this case.

"It is strongly insisted, however, that this deed conveyed the fee in the timber and minerals described, and as there is no stipulation in the instru-

ment as to when the grantees shall commence the development of the property, and no condition reserving to the grantor the right to re-enter or enforce a forfeiture for inaction on the part of the grantees, however long it may continue, the grantor must be left without remedy or redress. It is true that the contract does not expressly or in terms impose any conditions upon the grantees, or mention when, if at all, the development of the property is to begin. But the court will not be hindered in its purpose to give to a contract like this a construction that will carry out the manifest intention of the parties by the mere omission of conditions that perhaps would have made plainer the purpose of its execution. We will read into the contract such terms and conditions as the contract and the circumstances surrounding its execution warrant us in assuming were in the minds of the parties when it was entered into. So interpreting it, we are well satisfied that it should be read as if there had been inserted in it, in apt terms, a condition imposing upon the grantees the duty of beginning within a reasonable time under pain of forfeiture or abandonment the development of the estate granted.''

Clearly the principles above announced apply with equal force to the case under consideration. The oil, bitumen, and other products in 82½ acres of land were involved. The cash consideration of $5, being at the rate of only six cents an acre, was merely nominal. The real consideration was the development of the property and the payment of royalties. Considering the instrument in the light of its provisions, and the situation of the parties, it is clear that it was never intended that the grantees should hold the property forever without paying anything for the privilege. In the circumstances there is no escape from the conclusion that the instrument, regardless of the name it was called, was intended as a lease, and was executed on the condition that the property would be developed within a reasonable time. Development having been delayed for more than 30 years, it follows that appellants have abandoned their rights under the instrument and no longer have any interest in the property.

Judgment affirmed.