DANCIGER OIL & REFINING COMPANY OF TEXAS ET AL V. CLARENCE POWELL ET AL.

No. 7689. Decided July 23, 1941.
Rehearing overruled October 15, 1941.
(154 S. W., 2d Series, 632.)

*Charles L. Morgan* and *W. C. Hock,* of Fort Worth, *Ringgolsky, Boatwright & Jacobs,* of Kansas City, Mo., *Morgan Culton, Morgan & Braitain,* of Amarillo, *Black, Graves & Stayton,* of Austin, for plaintiffs in error.

The parties having made an express contract in respect to the subject of development, there is no room for an implied contract covering the same subject. Having expressly contracted that the right "to protect and develop" granted by the deed should be subject "only to the covenants hereinafter set forth," that is, only to the covenants "expressed" or "recited" or "stated at large," and having further expressly contracted for the drilling of offset wells, there remains no basis for the creating of an implied contract covering the same subject matter. Gulf Production Co. v. Kishi, 129 Texas 487, 103 S. W. (2d) 965; Bagley v. General Fire Extinguisher Co., 150 Fed. (2d) 284; Cole Petroleum Co. v. United States Gas & Oil Co., 121 Texas 59, 41 S. W. (2d) 414; 10 Tex. Jur., 301.

*Hardwicke & Cheek,* of Fort Worth, for defendants in error.

Under the terms of the instrument involved, there existed

an implied covenant on the part of the oil company to develop the land with reasonable diligence after the discovery of oil in paying quantities, as no right was reserved by the plaintiffs to drill for or produce oil. Waggoner Estate v. Sigler, 118 Texas 509, 19 S. W. (2d) 27; Texas Co. v. Ramsower, 7 S. W. (2d) 872; Texas Co. v. Davis, 113 Texas 321, 254 S. W. 304; Merrill on Covenants Implied in Oil & Gas Leases (2d Ed.) 148.

CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit was brought by Clarence Powell and wife against Danciger Oil & Refining Company of Texas and others for damages for failure to develop a certain tract of land for oil and gas mining purposes after oil had been discovered thereon. The only material question to be determined is whether or not, under the contract beteen the parties, there was an implied covenant to so develop the property.

In 1919, G. N. Powell and wife sold a section of land including the land in question to one Eldridge, and reserved and retained an undivided 7/8th interest in and to the minerals, oil, etc., under the land, with the understanding that 1/8th of such minerals, including the oil and gas, when mined should be delivered to Eldridge free of cost. On July 24, 1929, Powell and wife executed and delivered to Danciger Oil & Refining Company an assignment of their 7/8th interest in the minerals in two quarter sections of said land. Said assignment recited the fact that the land had previously been sold to Eldridge and the conditions of such sale. The remainder of the assignment was as follows:

"WHEREAS, the said G. N. Powell and wife, Sarah Powell, are now the owners of the mineral interest reversed in said deed as aforesaid, and they have now sold to the Danciger Oil & Refining Company of Texas, a corporation, the undivided seven-eighths (7/8) interest in the oil, gas and casinghead gas reserved and retained in said deed, with the reservations hereinafter made, insofar as the same are in and under the following described two tracts of land situated in Gray County, Texas, to-wit: (Description of land); the said G. N. Powell and wife having heretofore conveyed the Northwest Quarter and Southeast Quarter of said section to the said Danciger Oil & Refining Company of Texas, by virtue of conveyance dated the 22 day of March 1929, recorded in Volume 38, Page 95, of the

Deed Records of Gray County, Texas, to which reference is hereby made for all purposes:

"NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS:

"That we, G. N. Powell and wife, Sarah Powell, for and in consideration of the sum of Fifty Thousand ($50,000.00) Dollars to us cash in hand paid by the Danciger Oil & Refining Company of Texas, a corporation, the receipt of which is hereby acknowledged, and in further consideration of the sum of Fifty Thousand ($50,000.00) Dollars to be paid as follows:

"Out of oil, gas and casinghead gas that may be produced, saved and sold from the interest of grantee in said section 28, the sum of Seven Thousand One Hundred Forty-two and 86/100 ($7,142.86) Dollars, sixty days after the date hereof, and not later than on September 23, 1929;

"And the payment of an additional sum of Seven Thousand One Hundred Forty-two and 86/100 ($7,142.86) Dollars on the 23rd day of each month thereafter until the full amount of said Fifty Thousand ($50,000.00) Dollars has been paid;

"Said payments to be made out of all the oil, gas and casinghead gas owned by grantee in said Section 28, and Pipe Line Companies running said oil, gas and casinghead gas are hereby authorized and directed to make said monthly payments direct to grantors herein; provided, however, that said pipe line companies are only to deduct from the amount due the amount of said monthly payments as they accrue, and any balance which may have accrued at the time such monthly payments become due shall be delivered to the grantee, its successors and assigns. In this connection it is understood and agreed that should the oil, gas, and casinghead gas prove insufficient to make the monthly payments as aforesaid, same shall be made in cash, it being the intention of all parties that said payments shall be made on said dates in any event.

"And in further consideration of the covenants and agreements hereinafter set forth to be kept and performed by the grantee, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the Danciger Oil & Refining Company of Texas, a corporation, an undivided seven-eighths (7/8) interest in and to all of the oil, gas and casinghead gas found or to be found under or within the lines or area of the Northeast Quarter and the Southwest Quarter of said Section 28, Block B-2, surveyed for the benefit of the Public Free School

Fund of Texas by virtue of Certificate 15/3165, issued to the H. & G. N. R. R. Co., containing 320 acres of land, more or less, situated in Gray County, Texas, with such reasonable use of the surface ground as may be necessary to win, work and carry away such oil, gas and casinghead gas, with the right at any time to prospect for and develop such oil, gas and casinghead gas, subject only to the limitations and covenants hereinafter set forth.

"TO HAVE AND TO HOLD the same unto DANCIGER OIL & REFINING COMPANY OF TEXAS, its successors and assigns.

"As a part of the consideration for the conveyance, Danciger Oil & Refining Company of Texas, covenants and agrees as follows:

"1. That if oil be produced and saved from the land last above described, it will deliver to the said J. M. Eldridge, his heirs and assigns, one-eighth of all the oil produced, saved and sold from said land, the same to be delivered at the wells or to the credit of J. M. Eldridge, his heirs and assigns, in the pipe line to which the wells may be connected, free of cost to them; and if any gas be produced from said land and sold or used off the premises or in the manufacture of gasoline, including casinghead gas, that it will pay or cause to be paid to the said J. M. Eldridge, his heirs and assigns, the one-eighth of the market value of the well of the gas or casinghead gas so sold, used or saved, provided that if and when the grantee shall sell gas at the wells the royalty interest of said Eldridge, his heirs, and assigns, thereon shall be one-eighth (1/8) of the amount realized from such sale.

"2. There is expressly excepted and reserved to the grantors, herein, their heirs and assigns, an overriding one-eighth interest in and to all of the oil, gas, and casinghead gas in and under and that may be produced from land in the lines and areas of the above described land, being the Northeast quarter and southwest quarter of said section 28 above described and the grantee, Danciger Oil & Refining Company of Texas, hereby covenants and agrees as follows:

"(1) To permit the delivery to the credit of said grantors, free of cost in the pipe line to which it may connect its wells, the equal one-eighth (1/8) part of all oil produced, saved and sold from the above described premises;

"(2) To permit the payment to the grantors one-eighth (1/8) of the net proceeds derived from the sale of gas delivered to the pipe line for the gas from each well where gas only is found while the same is being used off the premises;

"(3) To permit the payment to grantors for gas produced from any oil well, one-eighth (1/8) of the net proceeds derived from the sale of gas delivered to the pipe line for the time during which such gas shall be used; provided, however, that in the event grantee should use such casinghead gas itself for the manufacture of gasoline or other purposes, then to pay grantors on the basis of one-eighth of the customary and prevailing price paid by other casinghead plants in the oil field surrounding said premises.

"3. It is further understood and agreed by the grantors and grantee that grantee shall make reasonable provisions in the way of storage tanks to take care of flush production, and to connect the well or wells with such storage tanks, and if said storage tanks shall prove insufficient to take care of the flush production, that the grantee will make reasonable efforts to get the flush production under control; and furthermore, grantee expressly covenants and agrees that it will protect said premises hereby conveyed against all offset wells drilled within 330 feet of the property line of said premises conveyed hereby to the said Danciger Oil & Refining Company of Texas.

"4. Grantee shall have the right to use, free of cost, gas, oil and water produced on said section 28 above described, for all operations thereon, except from water wells of grantors.

"5. It is further understood and agreed that this contract shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto, and each of them, and that the privilege of assigning is expressly allowed to each of the parties hereto.

"6. This cntract is entered into in pursuance of the reservation in the deed of conveyance to J. M. Eldridge first above referred to, and is made subject thereto.

"And for the same consideration, the grantors herein, for themselves, their heirs and assigns, do hereby bind themselves and their heirs, executors and administrators to warrant and forever defend, all and singular, the above described property

unto the said Danciger Oil & Refining Company of Texas, its successors and assigns against every person whomever lawfully claiming and to claim the same or any part thereof except any claim of Okey Oil & Gas Company or its assigns."

The trial court instructed a verdict for the defendants. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. 134 S. W. (2d) 493.

1, 2 In the outset it should be noted that when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole. An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole. 21 C. J. S. 888; 13 C. J. 558; 15 C. J. 1214; 14 Amer. Jur. 490; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Texas 439, 6 S. W. (2d) 1039; Grass v. Big Creek Development Co. 75 W. Va. 719, 84 S. E. 750, L. R. A. 1915E, 1057. However, covenants will be implied in fact when necessary to give effect to the actual intention of the parties as reflected by the contract or conveyance as constructed in its entirety in the light of the circumstances under which it was made and the purposes sought to be accomplished thereby. See Property Interest Created by Lease, by A. W. Walker, Jr., Professor of Law, University of Texas, 11 Texas Law Review 402.

There are numerous authorities in Texas which recognize the doctrine of an implied covenant in the usual gas and oil mining lease for the reasonable devolopment of the property after the discovery of oil or gas in paying quantities. W. T.

Waggoner Est. v. Sigler Oil Co., 118 Texas 509, 19 S. W. (2d) 27, and cases cited; Grubb v. McAfee, 109 Texas, 527, 212 S. W. 464; Munsey v. Marnet Oil & Gas Co., 113 Texas 212, 254 S. W. 311; Kentucky Rock Asphalt Co. v. Milliner, 234 Ky. 217, 27 S. W. (2d) 937; Merrill on Implied Covenants, p. 122; Summers on Oil & Gas, Vol. 2, p. 333, sec. 398.

3 In recognition of the distinction between a lease and a conveyance of the minerals, some authorities seem to hold that if the instrument is a lease there is an implied covenant for reasonable development after the discovery of oil, but if the instrument is a conveyance of the minerals there is no such implied covenant. Adams v. Elkhorn Coal Corp., 199 Ky. 612, 251 S. W. 654; Looms v. Gulf Oil Corp. (Civ. App.), 123 S. W. (2d) 501; Carpenter v. Smith (Com. App.), 272 S. W. 128, Grain v. Pure Oil Co., 25 Fed. (2d) 824; Feather v. Baird, 85 W. Va. 267, 102 S. E. 294; Prof. Walker on Express Clauses Affecting Implied obligations, 13 Miss. Law Journal 292.

4 However, we are of the opinion that there can be such an implied covenant to develop the property even though the instrument be a conveyance of the minerals and not a lease. This Court so held in the Freeport Sulphur Company v. American Sulphur Royalty Company case, supra. It must be recognized, however, that there is much stronger reason for favoring an implied covenant to develop under an ordinary gas and oil mining lease than there is in a conveyance of the minerals with a reservation of a fractional part thereof. Among these are the fact that a lease is usually for only a limited time, with provision for termination thereafter upon a cessation of production; whereas, a conveyance is unlimited as to time. But the most essential difference is the fact that the predominating purpose of a lease is to secure the exploitation and development of the property for the purposes set out in the lease. Often the consideration paid to the lessor as a down payment is very small, and it is evident that the main purpose is granting the lease is the lessor's desire to have his land promptly explored, and thoroughly and diligently developed, with the hopes of receiving more handsome returns in royalties. W. T. Waggoner Est. v. Sigler Oil Co., supra; Munsey v. Marnet Oil & Gas Co., supra; Kentucky Rock Asphalt Co. v. Milliner, supra; Mills v. Hartz, 77 Kans. 218, 94 Pac. 142; Mansfield Gas Co. v. Alexander, 97 Ark. 167, 133 S. W. 837; Merrill on Covenants Implied in Oil and Gas Leases, pp. 40, 128, 279. On the other

hand, conveyances of minerals are frequently actuated by a motive of investment on the part of the grantee and the cash consideration or other down payment is the moving cause for the conveyance by the grantor.

**5** A careful consideration of the instrument here under consideration discloses that it is a conveyance of the minerals, and is not a lease. By its terms the grantors for a substantial cash consideration did unconditionally "grant, sell and convey" the minerals to the grantee for an unlimited period of time. It was therefore a conveyance of the minerals. Lindsay v. Texas Iron & Steel Co., 9 S. W. (2d) 287; Carpenter v. Smith, 272 S. W. 128.

There is nothing in the instrument to indicate that its dominant purpose was to obtain an exploitation or development of the property for oil and gas mining purposes. There was a substantial consideration, $50,000.00, paid as a down payment. Fifty Thousand Dollars additional was to be paid in oil in monthly installments, but care was exercised to see that these payments were to be made regardless of whether the production from the land was or was not sufficient to meet the payments. Specific provision was made for the drilling of offset wells to prevent drainage, but no provision was made for the drilling of any wells at any time for any other purpose whatever. Grantee was given the "right *at any time* to prospect for and develop such oil, gas and casinghead gas," but the conveyance is absolutely silent as to any provision *requiring* grantee at any time to either explore the land for the discovery of oil or gas, or to develop it in any manner after the discovery thereof. The conveyance was unlimited as to time, with no provision for forfeiture or reverter for lack of exploitation or development. Furthermore, we call attention to the fact that the conveyance in question provided that the grantees should have title to such minerals "with such reasonable use of the surface ground as may be necessary to win, work, and carry away such oil, gas and casinghead gas, and *with the right at any time* to prospect for and develop such oil, gas, and casinghead gas, *subject only to the limitations and covenants hereinafter set forth.*" (Italics ours.) In view of the facts heretofore recited, we think that this provision has great weight in evidencing an intention to exclude every covenant except those expressly set forth. From these circumstances, it can hardly be said that it was so clearly within the con-

templation of the parties that there should be development of the property that such parties deemed it unnecessary to so provide therefor in the contract. The only circumstance whatever in favor of an implied covenant to develop is the fact that the grantor retained an overriding 1/8th interest in the minerals, to be delivered to him, free of cost, when mined. We are of the opinion that this provision standing alone, unaided by any other circumstance, is under the circumstances in this case not sufficient to justify the reading into the written contract of an additional provision binding the grantee to make speedy development of the property in the event of the discovery of oil or gas in paying quantities. We are of the opinion that there was no implied covenant to develop the property for oil and gas mining purposes. Hence, plaintiffs were not entitled to recover.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered July 23, 1941.

Rehearing overruled October 15, 1941.