**DALLAS POWER AND LIGHT COMPANY et al., Petitioners,**

v.

**J. V. CLEGHORN et al., Respondents.**

**No. C–197.**

Supreme Court of Texas.

Nov. 4, 1981.

Worsham, Forsythe & Samples, Robert A. Wooldridge and John W. McReynolds, Dallas, for petitioners.

Wheat, Thornton & Burnett, William L. Burnett, Houston, for respondents.

RAY, Justice.

This case involves interpretation of eleven no term coal and lignite leases. The issue is whether, under the express terms of the leases, there is an implied covenant to develop. Lessors, J. V. Cleghorn and others, sought a declaratory judgment cancelling the leases, or in the alternative a conditional decree requiring lessees to explore and develop the leased land under an implied covenant to develop. Lessees, Dallas Power & Light Company and others, filed motions for summary judgment alleging that the express terms of the leases precluded an implied covenant to develop. The trial court granted summary judgment in favor of the lessees. The court of civil appeals reversed the judgment of the trial court and held that an implied covenant to develop did exist; that an alternative/conditional decree could be an appropriate remedy; and remanded for trial on the merits. 611 S.W.2d 893. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Lessors entered into lease agreements with Dallas Power & Light Company and others, granting the lessees the right to mine coal and lignite. No primary term was specified in which the lessees were to explore and develop the leases. The lessees, however, could maintain rights to the leases so long as they paid annual delay rentals of fifty cents per acre.

The leases were in effect in 1976, when the lessors refused to accept further rentals, declared the leases terminated, and requested releases from the lessees. Lessors then brought a declaratory judgment action seeking to have the leases cancelled. They alleged that the leases contained an implied covenant to develop. As an alternative, the lessors demanded that lessees begin mining operations within a reasonable time or suffer forfeiture.

Lessees urged in their motion for summary judgment that the following lease provisions precluded any implied covenant to develop:

"It is understood between the parties hereto that this lease shall not be forfeited for any failure to prosecute mining operations on the lands hereinabove described . . . nor shall any forfeiture be claimed or enforced for the breach of any implied covenant, but the title to the minerals in said land hereby leased shall not revert to First Party [lessor] or his assigns so long as the annual rentals as herein provided for are being paid to First Party [lessor] . . . .

\*   \*   \*   \*   \*   \*

So long as Second Party [lessee] pays to First Party [lessor] the lease rentals herein specified . . . Second Party [lessee] shall have, and he is hereby granted, the exclusive right to . . . such premises . . . ."

On appeal, lessors insist that the trial court committed error in granting summary judgment in favor of the lessees because the quoted language of the lease should not be read to preclude the operation of an implied covenant to reasonably explore and develop the minerals. Lessors also asked that they be granted the relief of a conditional or alternative decree requiring lessees to fulfill their obligations under the implied covenant with a time specified by the court or jury or suffer cancellation of the subject leases.

The court of civil appeals held there was an implied covenant to reasonably develop the leases and reversed and remanded the case for a trial on the merits.

Lessees contend there can be no implied covenant arising out of an instrument which contains express terms negating such a covenant and that the leases make clear the express intention of the parties to disclaim any covenant of development by the lessees. We sustain this view.

█ There is no implied covenant when the agreement expressly negates the covenant. *Danciger Oil and Refining Company v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941) and *Freeport Sulphur Company v. American Sulphur Royalty Company*, 117 Tex. 439, 6 S.W.2d 1039, 1043 (1928).

There is no express promise made by the lessees to commence mining operations. Moreover, any implied promise to do so is negated by the specific language of the leases.

█ The only provisions within the eleven leases that relate to any obligation of development are those within which (1) the parties agreed that the lease would continue so long as delay rentals were paid; and (2) the parties agreed that no forfeiture would result from either the lessee's failure to prosecute mining operations or from any breach of any implied covenant. These provisions of the leases directly contradict any implied covenant of development. Courts in construing contracts cannot, by implication, find terms in opposition to the express language that the parties themselves have written into the contracts. *W. T. Waggoner Estate v. Sigler Oil Company*, 118 Tex. 509, 19 S.W.2d 27, 30 (1929).

The provisions excluding the remedy of forfeiture, and those stating that title shall not revert to the lessor so long as delay rentals are paid, are readily capable of be-

ing given their plain meaning and intent. The words used and agreed upon by the parties are clear; thus, the parties' mutual intent is clear. Summers expressed it in his treatise on Oil and Gas:

"[I]f the parties have deliberately, and without fraud or mistake, entered into a valid lease ... in terms of plain and unmistakable meaning, a court does not have the power to place a different interpretation upon the contract on grounds of policy that it would be better for the lessor or landowners generally to have the contract different. This rule has been much applied, *to prevent the reading into oil and gas leases by implication covenants and conditions on the part of the lessee to immediately drill or forfeit the lease, where the lease on its face shows that the parties contemplated delay, and expressly contracted for the conditions under which it might be had.*" (emphasis added).

2 W. Summers, Oil and Gas § 373 (1959).

We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

CAMPBELL, J., concurs in which SPEARS and WALLACE, JJ., join.

CAMPBELL, Justice, concurring.

This Court should not now apply the law of implied covenants in oil and gas leases to lignite and coal leases. Heavy commercial use of lignite and coal is just beginning in Texas. Our jurisprudence of hard minerals has not been developed.

The mining, transporting, storage, use, and marketing of lignite and coal is so different from oil and gas the implied covenants in oil and gas leases may not be applicable. The unwritten intent of the parties of a lignite and coal lease will probably be different from those of an oil and gas lease. The ability to develop is different because the lignite and coal lessee may have to construct the consuming facility and this often takes several years and is *very* costly. One consuming facility may be the only marketing outlet for many years. A coal and lignite lessee with a lease of

several thousand acres cannot extract the mineral from each lease on a prorata basis as may be done in some oil and gas leases covering a large acreage. Implied covenants in oil and gas leases may not be applicable.

I agree that if there is an implied covenant to reasonably develop a coal and lignite lease, this contract negates forfeiture by express language. However, the contract does not stop here. It provides that no forfeiture shall result from the breach of *any implied covenant.* This is very broad and could well be subjected to the reasonableness test as have non-competition contracts, the reasonable prudent operator test of oil and gas operators, or other limitations.

Lessor and lessee have contracted that no forfeiture would result from lessee's failure to prosecute mining operations so long as delay rentals are paid. In this cause lessor has contracted against the right to cancel the lease for the failure of lessee to prosecute mining operations.

I concur in the result.

SPEARS and WALLACE, JJ., join in this concurring opinion.