**Erwin E. GRIMES, Appellant,**

v.

**WALSH & WATTS, INC., et al., Appellees.**

No. 7131.

Court of Appeals of Texas, El Paso.

March 23, 1983.

Rehearing Denied April 20, 1983.

---

Tom McCall, Steven C. Kiser, Midland, for appellant.

Lee Sellers, Prothro & Sellers, Wichita Falls, Harrell Feldt, Rodney W. Satterwhite, Marc Skeen, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for appellees.

Before STEPHEN PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is an appeal from a take nothing judgment rendered against the Appellant, Erwin E. Grimes, in his suit tried before the court to establish an undivided 5% overriding royalty interest in an oil and gas lease owned by the Appellees. Findings of fact and conclusions of law were requested and filed. We affirm.

The most important facts are undisputed, having been established by the Appellees'

admissions. On or about October 20, 1976, Mr. Grimes, the Plaintiff-Appellant, obtained a farmout agreement from the Jones Estate Oil Account covering a forty-acre tract in Gaines County by which he was to drill a well and thereby earn an oil and gas lease covering the tract. On November 11, 1976, Plaintiff entered into a letter agreement with I.W. Lovelady wherein the drilling rights under the farmout were assigned to Lovelady, the Appellant reserving to himself an undivided 5% of 100% overriding royalty interest. This agreement set out an area of mutual interest covering some seventeen sections which included the forty-acre tract and which further provided as follows:

As to any given lease acquired by you in the area during the period ending December 3, 1979, whether the lease originates with you or me, there shall be set aside to me an overriding royalty of 5% of production.

This area of interest agreement spoke only to rights and obligations between the Plaintiff and Lovelady and did not purport to bind any heirs, successors and assigns.

On or about January 25, 1977, Lovelady then entered into a letter agreement with the Defendant-Appellee Walsh & Watts, Inc., who agreed to purchase an undivided one-fifth of the leasehold interest which Lovelady had acquired from the Appellant. In return, the Defendant agreed to pay a stated portion of all costs of acquiring and drilling the well. The agreement further provided that it should never be deemed to constitute the parties thereto as partners, joint venturers or associates. In describing the farmout agreement held by Lovelady, a copy of that farmout from the Jones Estate Oil Account to the Plaintiff was attached to the Lovelady/Walsh & Watts agreement. Also attached and made a part was a copy of the letter agreement whereby Lovelady acquired the farmout from the Plaintiff.

Under the terms of the farmout agreement, Lovelady as operator drilled the well. Although casing was set and some production was obtained, it was determined not to be commercially productive and was aban-

doned. Thereafter, Lovelady and the Defendant Walsh & Watts, Inc., and the other co-owners released the farmout agreement and the lease acquired thereunder back to the Jones Estate Oil Account although the lease had previously expired for nonproduction.

Thereafter, in April, 1979, the Defendant Walsh & Watts, Inc. secured a new farmout from the Jones Estate Oil Account covering the same forty-acre tract under the agreement proposing to recomplete the previously abandoned well. At that time, the Defendant also purchased from Lovelady his surface and subsurface equipment at the site. The Defendant Walsh & Watts, Inc., after conveying undivided net revenue interests to the Defendants Guinn & Walsh individually, re-entered the same hole abandoned by Lovelady and completed the well causing it to become a commercial producer. As a consequence, the Defendants pursuant to their new farmout agreement were given a new oil, gas and mineral lease from the Jones Estate Oil Account covering the same forty-acre tract of land, the lease being dated June 29, 1979.

After the well was completed, the Plaintiff brought the present suit contending that the area covenant found in the Grimes/Lovelady agreement was enforceable against the Defendants and that he was entitled to his 5% overriding royalty interest, as well as an accounting, specific performance and a constructive trust. Appellees contended that under any theory of law the area of interest covenant in the Grimes/Lovelady agreement would not apply to them, as it was only a personal covenant between the parties to that agreement. In its findings, the trial court found and concluded that the area of interest covenant found in the Grimes/Lovelady agreement was merely a personal covenant between the Appellant and Lovelady, that it was not a covenant running with the land, and that the Appellees did not voluntarily assume the obligations imposed by it. The trial court further found that the estate or interest held by the Appellees as successors to Lovelady terminated prior to the cre-

ation of the estate or interest which the Appellant now seeks to burden. The court then concluded that the Appellees had no obligation to the Appellant under the new lease between the Appellees and the Jones Estate. In connection with other asserted errors, the trial court further found that no fiduciary or confidential relationship existed between the parties. Further, it found and concluded that the Appellant had acquired other interests on lands located within the joint area of interest which he did not offer to Lovelady or the Appellees, the implication being that the Appellant could not with unclean hands equitably enforce a covenant which he himself had breached.

■ A series of the Plaintiff's points assert error and attack the trial court's findings and holdings to the effect that none of the Defendants assumed the area of interest obligation contained within the Grimes/Lovelady letter agreement, it being the Plaintiff's position that the Defendants voluntarily and personally assumed the obligation under the area of interest provision because it was incorporated by reference into their own agreement with Lovelady. While it is true that reference made in the Lovelady/Walsh & Watts agreement to the Plaintiff's agreement with Lovelady put the Defendants upon notice of the interest acquired by Lovelady, we fail to see that the Defendants voluntarily agreed to assume the burden represented by the area of interest covenant. Lovelady voluntarily agreed to be personally bound by the above-quoted area of interest covenant, but the covenant does not purport to bind successors, heirs or assigns. While the later agreement referred to the first agreement, the Defendants did not take on the obligations of their own grantor. *Lawrence v. United States,* 378 F.2d 452 (5th Cir.1967).

■ There being no voluntary agreement to assume the covenant as a personal obligation, we next look to the assertion made by the Appellant that one arose by implication. In this regard, this Court has said that courts cannot make contracts for parties and can declare implied covenants to exist only where it appears such covenants

were clearly contemplated by the parties or were necessary to effect the purposes of the contract. *Stalcup v. Eastham,* 330 S.W.2d 237 at 240 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.). The rule under which the appellant must bring his case to show a contract by implication from the language actually used by the parties was originally stated by the Supreme Court in *Danciger Oil & Refining Co. of Texas v. Powell,* 137 Tex. 484, 154 S.W.2d 632 at 635, 137 A.L.R. 408 (1942), and quoted with approval in *Palm v. Mortgage Investment Co. of El Paso,* 229 S.W.2d 869, 873 (Tex.Civ.App.—El Paso 1950, no writ), and *Ingram Freezers v. Atchison, Topeka & Santa Fe Railway Company,* 464 S.W.2d 915 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.):

> An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole.

We hold that there is nothing in the agreement before us which supports an implication that the Defendants, as purchasers of the percentage of the prospect that Lovelady had previously purchased from the Plaintiff, should be bound by the personal obligation that Lovelady undertook as to future operations in the designated area of interest.

■ The Appellant next presents a series of points contending that the area of mutual interest agreement was one which ran with the land and thus bound the Ap-

pellees. The Appellant relies primarily upon *Westland Oil Development Corporation v. Gulf Oil Corporation,* 637 S.W.2d 903 (Tex.1982). In that case, the area of mutual interest covenant was held to run with the land, the court finding that both privity of estate existed and that the agreement touched and concerned the land. The court there found privity of estate existed because of the successive assignments in the leases involved. Here, we find no privity of estate. Privity is defined as a mutual or successive relationship to the same rights of property. Black's Law Dictionary (Rev. 4th ed. 1968). In this case, there is no mutual or successive relationship as to the property the Plaintiff seeks to burden. While there was such a relationship as to the original lease earned by the farmout, that lease terminated and was released. When the original lease terminated, the Plaintiff's overriding royalty therein was lost. Plaintiff no longer owned any interest in the property. The determinable fee created by the original lease terminated and the entire estate created by that lease reverted back to the Jones Estate Oil Trust. Thereafter, the Defendant secured a new lease which created in them a new determinable fee in no way successive to or in the chain of title of any interest the Plaintiff ever owned.

The Restatement of the Law, Property Vol. 5, sec. 535 (1944), provides that successors in title are not bound as promisors unless by their succession they hold (a) the estate or interest held by the promisor or (b) an estate or interest corresponding in duration to the estate or interest held by the promisor. The Appellees hold pursuant to a completely different lease. We hold that privity of estate does not exist and therefore the covenant did not run with the land.

Appellant next presents points asserting that the area of interest agreement could be enforced as there existed with the Appellees a fiduciary or confidential relationship which was breached, and that the Appellant was entitled to the imposition of a constructive trust upon the Appellees' lease. The trial court found that no such

relationship existed between the parties, and we uphold the finding. The mere assignment of an oil and gas lease reserving an overriding royalty interest does not in itself create a confidential or fiduciary relationship between the assignor and assignee. If one is created, it must be by the terms of the assignment or by other acts of the parties. *Sunac Petroleum Corporation v. Parkes,* 416 S.W.2d 798, 804 (Tex.1967). There is no evidence that the Appellees occupied a position of trust and confidence with the Appellant or any relation other than that occupied by the Appellee as a partial assignee of the original agreement. Under the facts of the case, we see no basis for holding that there existed a confidential or fiduciary relationship and there was no constructive trust.

We have considered all of the Appellant's points, and they are overruled. The judgment of the trial court is affirmed.