In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00068-CV


______________________________




IN THE INTEREST OF C.W.C., A.C., J.C.,


AND A.C., MINOR CHILDREN






 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. 19752




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Andre Larue Coleman, Sr., has filed an appeal, pro se, from an "Order on Appeal from
Associate Judge's Hearing." The order from which Coleman appeals was signed April 23, 2007. 
Coleman filed a docketing statement May 23, 2007, which we treated as a notice of appeal. See
Foster v. Williams, 74 S.W.3d 200, 203 (Tex. App.--Texarkana 2002, pet. denied).

 The record was due to be filed on or before August 20, 2007. Appellant is not indigent, and
is thus responsible for paying or making adequate arrangements to pay the clerk's fees for preparing
the record. See Tex. R. App. P. 37.3(b). On October 1, 2007, we contacted Coleman by letter,
reminding him that the record was over thirty days past due, and warning him that, if we did not
receive an adequate response within ten days, we would dismiss the appeal for want of prosecution
pursuant to Rule 42.3(b) and (c) of the Texas Rules of Appellate Procedure. See Tex. R. App. P.
42.3(b), (c).

 As of the date of this opinion, we have received no response. 

 We dismiss the appeal for want of prosecution.



 Bailey C. Moseley

 Justice


Date Submitted: October 29, 2007

Date Decided: October 30, 2007



th were on June 17, and according to the assistant district
attorney's testimony, she explained the application for probation to Smith on that day. She
testified specifically as follows:

 Every time we do a plea I bring paperwork to the courtroom and present it to
pro se defendants and explain to them what the papers say, where they're
expected to sign, and what decisions they have to make.


 . . . .


 When I hand the stack of paperwork to a defendant, [the application for
probation] is always the top document in the stack, and my standard
explanation which I gave something very similar to it, I can't recite word for
word what I said, but I hand the documents to each defendant and
sometimes there's more than one seated at the table and I'll say the top
document is an application for probation, if you are asking the judge to give
you probation instead of jail time and if you have never been convicted of a
felony anywhere in the United States, then you need to sign this document
where it says defendant, notice that there are two places that you will need
to sign, the first signature Line is your statement that you want probation and
that you have never been convicted of a felony, the second signature Line
is . . . an oath and you are swearing under oath that what you said at the top
of the page is the truth.


 . . . .


 I always tell [pro se defendants] that if they have been convicted of a felony,
it does not mean they cannot be given probation. It simply means that they
must mark out the word "never" before they sign their name. And that's also
part of my standard statement that I make to a pro se defendant before we
do the pleas. If Mr. Smith had in fact marked out the word never, I would
have changed his papers and recommended a straight probation instead of
deferred.


 Smith is correct that public policy generally prevents the prosecutor from assisting
a defendant at trial. Under our adversarial system, it is inappropriate in a criminal case for
anyone other than the defendant's own counsel to give legal advice to the defendant. 
Smith waived his right to counsel and did not contest guilt at the trial of the underlying
misdemeanor offense. Because he did not contest his guilt, the trial court therefore was
only required to determine whether his waiver of the right to counsel was knowing,
intelligent, and voluntary, but was not required to admonish him of the dangers and
disadvantages of self-representation pursuant to Faretta. (1) Hatten v. State, 71 S.W.3d 332,
334 (Tex. Crim. App. 2002). Nonetheless, it is inconsistent with our adversarial system for
the prosecuting attorney to explain to defendants what legal documents "say," or "what
decisions [the defendants] have to make," or what words they should or should not "mark
out" in a legal document, or even whether they are required to sign, or should sign, a
particular document. These are all matters on which the accused should have the advice
of his or her own independent counsel, unless such person has made a knowing,
intelligent, and voluntary waiver of the right to counsel, with full knowledge of the dangers
and disadvantages of self-representation. If an accused has made such waiver, with such
knowledge, then he or she should be held to the same standards as a licensed attorney
and, unless standby counsel has been appointed, left alone to deal with these matters. 

 This case is a good example of where mere determination of whether the accused
voluntarily and intelligently waived the right to counsel, without a corresponding
admonishment on the dangers and disadvantages of self-representation, should not qualify
as satisfying the right to counsel guarantees of the United States and Texas Constitutions. 
Since a defendant who has waived the right to counsel is necessarily relegated to self-representation, a determination of the voluntariness and intelligence of the waiver should
not-and perhaps cannot-be made without some determination of the defendant's
knowledge of the dangers and disadvantages of self-representation. We urge the Texas
Court of Criminal Appeals to re-examine its holding in Hatten. 

 Smith does not make adequacy of the trial court's admonishment in the theft
prosecution a part of his estoppel argument, and his own testimony at the trial of the
instant case clearly shows he did not, in signing the application for probation, rely on any
actions by the assistant district attorney. Rather, Smith contends that, even though he
made an untrue statement in the application for probation, the State is limited to the
remedies provided in the application: either denying probation or revoking his probation
based on his untruthful statements. He contends jeopardy has attached, and the State
cannot get the benefit of its bargain, and then more. 

 A plea agreement is a contractual arrangement. Ortiz v. State, 933 S.W.2d 102,
104 (Tex. Crim. App. 1996). We apply general contract law principles to determine the
content of a plea agreement in a criminal case. Ex parte Moussazadeh, 64 S.W.3d 404,
411 (Tex. Crim. App. 2001). Generally, courts look only to the written contract to discern
the contracting parties' obligations. See Sun Oil Co. v. Madeley, 626 S.W.2d 726, 727-28
(Tex. 1981); Danciger Oil & Ref. Co. v. Powell, 137 Tex. 484, 154 S.W.2d 632, 635 (1941).

 The exact language in the application for probation is:

 BEFORE ME, the undersigned authority, on this day personally
appeared, the Defendant, in the above styled and numbered cause, who
being by me duly sworn, deposes and says on his/ Oath that every averment
in the foregoing petition and Application for Probation is true and correct, and
that he understands and acknowledges that any untrue statement in said
Application may be grounds for denial or revocation of any probation in said
cause. 


The language in the application is not limiting language. It does not restrict the state from
pursuing violations of the law resulting from the agreement. This is not a case of double
jeopardy, as Smith contends. The State is not trying him again or taking actions against
him for his misdemeanor theft; rather, Smith was charged with a completely separate
violation of the law that did not occur until he signed and swore to the truth of the
application for probation. There is no language in the application for probation preventing
the State from pursuing violations of the law that occur as a result of the plea agreement. 
Smith's first point of error is overruled.

 In his second point of error, Smith challenges the factual sufficiency of the evidence. 
A factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring
neither party. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000); see Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We set aside the verdict for factual
insufficiency if 1) the evidence in support of a vital fact, considered as standing alone, is
factually too weak to support it, or 2) looking at all the evidence, some evidence supports
a positive inference and some supports a negative inference, but the state's evidence is
so weak as to make the finding against the great weight and preponderance of the
available evidence. Goodman v. State, 66 S.W.3d 283, 285-86 (Tex. Crim. App. 2001). 

 A person commits perjury if, with the intent to deceive and with knowledge of the
statement's meaning: that person makes a false statement under oath or swears to the
truth of a false statement previously made and the statement is required or authorized by
law to be made under oath. Tex. Pen. Code Ann. § 37.02 (Vernon 1994). A person
commits aggravated perjury if the person makes a material false statement during or in
connection with an official proceeding. Tex. Pen. Code Ann. § 37.03 (Vernon 1994). A
judicial proceeding is an official proceeding. Tex. Pen. Code Ann. § 1.07(a)(33) (Vernon
1994). Smith clearly made a material false statement under oath during or in connection
with an official proceeding. He contends, however, the evidence is factually insufficient to
prove he had the requisite intent to deceive. 

 As pointed out above, the assistant district attorney testified she explained to Smith
the documents he signed at his theft trial. She further testified that, in making her
recommendation for deferred adjudication, she relied on Smith's statement in the
application that he had no prior felony convictions and that, had she known of these
convictions, her recommendation would have been different. Smith disputed that the
assistant district attorney explained the documents to him and testified he did not talk with
her at all about the documents. He testified it was another person, whom he assumed was 
the court reporter, who gave him the papers and hurried him along because that person
said the judge was waiting for him. Smith testified that he had an eleventh-grade
education, that he had received a high school GED diploma, and that he could read and
understand the application for probation.

 In conducting a factual sufficiency review, "an appellate court reviews the
factfinder's weighing of the evidence and is authorized to disagree with the factfinder's
determination." Clewis, 922 S.W.2d at 133. This review, however, must employ
appropriate deference to prevent an appellate court from substituting its judgment for that
of the fact-finder, and any evaluation should not substantially intrude on the fact-finder's
role as the sole judge of the weight and credibility given to any witness' testimony. Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). It is the province of the fact-finder
to determine the weight and credibility of each witness' testimony. Smith testified he could
read and write the English language and understood the document. The State provided
sufficient evidence to prove its case. We hold the evidence was factually sufficient to
support the verdict and overrule Smith's second point of error.

 In Smith's final point of error, he contends his trial counsel rendered ineffective
assistance of counsel by failing to subpoena the court reporter from the theft case when
it became evident the court reporter was a material witness. Smith contends trial counsel's
failure harmed him because her testimony would have decided the outcome of the case. 

 Smith testified a slender woman with reddish brown hair, whom he assumed was
the court reporter, handed him the plea agreement documents. Callie Johnson, Smith's
mother, testified a slim lady "with kind of brunette hair" spoke with Smith. Neither Smith
nor Johnson were able to identify this person by name; they only gave physical
descriptions. There is no evidence of whether Smith's trial counsel had already
investigated who this woman was or whether he had already spoken with her and
determined what relevant information she may have had.

 It is the defendant's burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). To prevail on a claim of ineffective assistance of counsel, the appellant must show
both 1) that counsel's performance was so deficient it was outside the range of reasonable
professional judgment, and 2) that the appellant was prejudiced by this performance and
there is a reasonable probability, one sufficient to undermine confidence in the outcome
of the trial, that the result of the trial would have been different. Id. at 812. An appellant
must demonstrate trial counsel's ineffectiveness in light of the totality of the circumstances. 
Id. at 813. The appellant must overcome the presumption that the challenged action might
be considered sound trial strategy. Id. The fact another attorney may have pursued a
different strategy does not necessarily indicate ineffective assistance of counsel. See
Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983). When facing a silent record
as to defense counsel's strategy, the court will not speculate as to defense counsel's
tactics or guess what the reasons might be for taking or not taking certain actions. See
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Without evidence of the
strategy and methods involved concerning counsel's actions at trial, the court will presume
sound trial strategy. See Thompson, 9 S.W.3d at 814. 

 Although the court reporter at the underlying prosecution may have been a material
witness, there is no evidence as to what her testimony would have been. Counsel may
have already spoken with her and determined her testimony would have been more
damaging than helpful. Absent evidence of the trial strategy, we will not speculate as to
counsel's tactics or guess what the reasons may have been for not calling the court
reporter to testify. We overrule Smith's final point of error.


 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: May 8, 2002

Date Decided: June 25, 2002


Publish

 
1. Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).