**Gloria DOUGLAS and Charlie Douglas, Jr., Appellants**

**v.**

**FIRST NATIONAL BANK OF HUGHES SPRINGS,**
**Appellee**

**No. 06-16-00090-CV**

Court of Appeals of Texas, Texarkana.

Date Submitted: May 10, 2017

Date Decided: June 6, 2017

William T. Hughey, The Hughey Law Firm, PLLC, P O Box 2012, Marshall, TX 75671, for appellant.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, 1725 Galleria Oaks Drive, Texarkana, TX 75503, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

On May 19, 2010, Gloria Douglas and Charlie Douglas, Jr., secured a loan from First National Bank of Hughes Springs (Bank) to purchase a 2010 Chevrolet automobile. On the same date and in connection with their installment loan agreement with the Bank, the Douglases signed an automatic transfer authorization (ATA) form which permitted the Bank to make automatic withdrawals of $686.10 per month from their joint checking account and apply the sums to their installment loan payment account. Under the terms of the ATA, the Bank was given permission to continue to withdraw sums from the Douglases' checking account until they gave the Bank written notice to stop the withdrawals.

The Douglases also purchased disability insurance provided by Central States Health & Life Co. of Omaha (Insurance Company), which would pay a maximum monthly disability benefit of $686.10 to the Bank, as the creditor beneficiary, in the event that either one of the Douglases became disabled. It is undisputed that Gloria became disabled, the Insurance Company made payments to the Bank as required by the terms of the disability insurance coverage, the Bank continued to withdraw sums from the Douglases' checking account pursuant to the ATA, and the loan for the 2010 Chevy Automobile was "effectively pa[id] off ... in 30 months rather than 60 months."[1]

In response to receiving news from the Bank in May 2013 that their loan was paid in full, the Douglases sued the Bank on July 7, 2015, for violations of the Deceptive Trade Practices Act (DTPA) and breach of an implied contract. In essence, the Douglases claimed that the Bank's continuation

---

1. The Insurance Company paid a total of $25,225.61 in disability benefits.

of the withdrawal of money from their checking account, even though it was receiving the full amount of the monthly payment on the loan from the Insurance Company, constituted "false, misleading or deceptive" and "unconscionable" actions that resulted in improper conversion of money from their checking account.[2]

The Bank filed a traditional motion for summary judgment on its affirmative defense that the two-year statute of limitations barred the Douglases' DTPA causes of action. The trial court granted the Bank's motion for summary judgment on the limitations ground, and the Douglases do not argue that the trial court erred in doing so. However, the Bank's summary judgment motion also argued that the Douglases' claim for breach of implied contract was barred by the express terms of the ATA, and the trial court agreed.[3] Thus, in a single issue asserted on appeal, the Douglases argue that the trial court erred in granting summary judgment on their claim for breach of an implied contract. Finding no error in the trial court's decision, we affirm the judgment.

## I. Standard of Review

The grant of a trial court's summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence*

*Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).

## II. Analysis

The Douglases argued that the Bank had an implied contractual duty to terminate automatic payments under the installment loan agreement once it started receiving disability benefits as creditor beneficiary. "Generally, a court looks only to the written agreement to determine the obligations of contracting parties." *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747 (Tex. 2003). Thus, "[i]f the parties have expressly stated the terms of their agreement, they have created an express contract and are bound by it to the exclusion of conflicting implied terms."[4] *Hiles v. Ar-*

---

**2.** The Douglases also sued the Insurance Company for failing to make additional payments after August 26, 2013. Their complaints against the Insurance Company were settled and dismissed. Accordingly, the Insurance Company is not a party to this appeal.

**3.** Because there was no prepayment penalty, the Bank further argued that the Douglases could not establish the element of damages.

**4.** "An 'implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must ap-

*nie & Co., P.C.*, 402 S.W.3d 820, 832 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (quoting *Malallah v. Noble Logistic Servs., Inc.*, No. 14-08-01030-CV, 2010 WL 343487, at *2 (Tex. App.—Houston [14th Dist.] Feb. 2, 2010, pet. denied) (mem. op.); *see Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex. App.—Amarillo 1984, no writ)).

■ The summary judgment evidence consisted of the terms of the ATA and the Douglases' responses to the Bank's requests for admissions. The ATA authorized a transfer from the Douglases' checking account to their installment loan payment account in the amount of $686.10 per month beginning on July 3, 2010, and ending on June 1, 2015. The ATA contained the following critical terms:

> TERMINATION OF THIS AGREEMENT: Any one of you may cancel this agreement by giving us written notice.
> . . . .
> LOAN PAYMENT AUTHORIZATION—If your Credited Account listed on page one is a debt you owe us (e.g. a mortgage or installment loan), then you agree that we may continue to charge the Debited Account until the loan is paid or until you provide us with written notice of cancellation.

The Douglases admitted (1) that they signed the ATA, (2) that the ATA permitted automatic withdrawal of $686.10 from their checking account every month, and (3) that they never provided the Bank with written notice to terminate the automatic withdrawal. In fact, the Douglases' affidavits established that although they had "notice[d] some irregularities in [their] account," which they mistakenly believed were "associated with ... [Gloria's] medi-

cal expenses," they did not realize that the Bank was making withdrawals pursuant to the ATA until they were notified that the loan had been paid in full. Further, their affidavits established that "there was no conversation about a rapid pay off," which conclusively negated any meeting of the minds on the part of the Bank with respect to any implied contractual duty to terminate automatic withdrawals under the ATA.

The Douglases argument on appeal asserts:

> [C]learly the contemplation of the parties would have been that the "Automatic Withdrawal Would Stop" a [sic] point that would be deemed unnecessary to express because it is embedded implicitly in the nature of the purpose of the three Agreements to wit to make the Monthly Payment as fixed in the Installment Agreement enter [sic] into by Appellant with Appellee, [sic] in keeping with this point the term period for the "Automatic Withdrawal Payments" was 7/3/2010 thru 6/3/2015 60 months[.]

This argument, unsupported by the authorities cited in the Douglases' briefing, would have this Court wholly ignore the plain terms of the express agreement provided in the ATA. It also ignores the reality that unless the Douglases provided written notice to stop payment under the ATA, the Bank was entitled to assume that the Douglases fully intended to pay off their loan in an accelerated manner.

■ We find that the trial court properly concluded that the Bank conclusively established that there were no genuine issues of material fact and that it was entitled to summary judgment as a matter

pear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it....' " *Universal Health Servs.*, 121 S.W.3d at 748 (quoting

*Danciger Oil & Ref. Co. of Tex. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941)). "Thus, a covenant will not be implied simply to make a contract fair, wise, or just." *Id.*

of law. Accordingly, we overrule the Douglases' point of error.[5]

## III. Conclusion

We affirm the trial court's judgment.

---

5. The Bank has also filed a brief in this case, which it contends constitutes a brief in support of a cross-appeal. However, because the entirety of this briefing contains argument as to why we should affirm the trial court's judgment and contains no argument that the trial court erred, we cannot construe the Bank's appeal as a true cross-appeal. Since we affirm the trial court's judgment, the points raised by that brief are moot and need not be addressed.