## FINANCE CORPORATION OF AMERICA v. STONE et al.

### No. 3891.

Court of Civil Appeals of Texas. Amarillo.
Oct. 19, 1932.

Rehearing Denied Nov. 16, 1932.

R. E. Prothro and Fischer & Fischer, all of Amarillo, for appellant.

R. E. Stalcup, of Dalhart, and Underwood & Strickland, of Amarillo, for appellees.

JACKSON, J.

Lela O. Stone, a feme sole, purchased an automobile from J. H. Austin, who was doing business in Amarillo under the trade-name of Auburn-Amarillo Company. In part payment for the car she executed an installment note dated January 4, 1930, in the principal sum of $366.96. The note provides for 15 per cent. attorneys' fees in case of default, and has the usual acceleration clause. At the same time she executed a chattel mortgage upon the automobile to secure the payment of the note, which provides that, in the event of a failure to pay any installment at maturity, the holder of the note was empowered to take possession of the property, with or without notice, and to sell the same at either public or private sale, and to apply the proceeds, less the expenses, as a credit upon the note; that a balance of $244.64 was unpaid when the maker defaulted in the installment due May 23, 1930.

For value before maturity, Austin, under his trade-name, transferred the note to the appellant Finance Corporation.

Said corporation instituted this suit, alleging in part as follows: "That plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania; that the defendant Lela O. Stone is a single woman and resides in Potter County, Texas; that defendant J. H. Austin is a resident citizen of Hartley County, Texas, and at the time and times hereinafter mentioned, was engaged in the automobile business at Amarillo, Potter County, Texas, under the trade name of Auburn-Amarillo Co."

Lela O. Stone defaulted.

The defendant Austin filed a plea in abatement, the substance of which is that plaintiff was a foreign corporation, having no permit to do business in the state of Texas; that the cause of action arose out of transactions done and performed within the state of Texas; and prayed that the suit be abated. This plea was not verified.

In reply thereto the plaintiff filed a supplemental petition which consists of a general demurrer, general denial, an admission that it was a foreign corporation and had no permit to do business in Texas; but further

alleged that it had never done any business in the state of Texas as such term is interpreted under the laws of the state requiring foreign corporations to obtain a permit to transact intrastate business. Plaintiff further set out the terms of its agreement with Austin which provides, in effect, that plaintiff should aid Austin in financing sales of automobiles by purchasing from him notes given therefor, agreeing that he would indorse and guarantee the payment of all such notes, and alleges that the note sued on was executed and taken under said contract. Plaintiff denied that it had ever maintained an office in Texas, that the contract with Austin was entered into in Pennsylvania, and the note sued on was payable there.

On a trial to the court without a jury, plaintiff's general demurrer to the plea in abatement was overruled, and, after a hearing upon the merits, the court sustained the plea in abatement and rendered judgment that plaintiff take nothing against the defendants.

■ Appellant's first proposition is that, unless the truth of the plea appears of record, an answer that plaintiff has not legal capacity to sue must be verified.

This is an abstract proposition of law which, as stated, is not correct. It assigns no error committed by the court, and, of course, cannot be considered.

■ It is contended under this proposition that the court erred in overruling the appellant's general demurrer to the plea in abatement, and that such ruling was error because the plea was not verified. Failure to verify a plea in abatement may render it subject to a special exception. If the plea alleges facts sufficient, if true, to abate the suit, it would be good as against a general demurrer because it is sufficient in substance. If the defendant fails to make oath to the plea, it is a matter of form required by the statute, and is a defect which can be challenged only by special exception. Unless it is specially excepted to for that reason, the defect is waived. A general demurrer will not reach it. Thompson v. Lutz (Tex. Civ. App.) 278 S. W. 333.

It is insisted by the second proposition that the trial court erred in sustaining Austin's plea in abatement and dismissing the suit, for the reason that the burden of proof was upon Austin to establish the plaintiff's legal incapacity to sue, and further because "no competent or relevant testimony or evidence was given by defendant to prove plaintiff's legal incapacity and because the preponderance of the evidence showed that all transactions by the plaintiff in its acquisition of the note sued upon were in the nature of interstate transactions."

This proposition is certainly not sustained by the record. The trial judge was not re-

quired to file findings of fact or conclusions of law, and we find none in the record.

■ The evidence shows that the appellant has its principal office and domicile in Philadelphia, Pa.; that a traveling representative came to Amarillo and selected E. A. Regal and his son and Mr. Prothro to represent it in Amarillo; that appellant's representative was named Risner, and Prothro's testimony is that Risner informed him that the Finance Corporation of America intended to finance Baker automobile dealers in Amarillo, and stated that, in order to facilitate the closing of loan arrangements for the protection of the company, a legal representative be appointed in Amarillo for the purpose of checking up credit risks, and that his company had found it to be a good policy to have two checks made on the credit risk on each deal; that he had already talked with Mr. E. A. Regal and agreed with him to engage in credit reporting for his company, and he wanted another man to check from another point of view and furnish information for his company; that Risner then agreed with witness Prothro for the latter to make credit reports covering each deal that his company financed, and that Risner furnished witness with written forms of procedure to be followed in making reports. The witness introduced a writing which is headed: "Credit reporting procedure," which recites that "as early as possible in the progress of a deal the dealer will telephone to our local representative and give him the information contained in applicant's statement. Our local representative will then telephone to our local credit report agent, who will make his investigation of the applicant." According to Prothro the Baker Automobile Company went out of business and Risner came again to see witness with reference to financing retail sales of automobiles for the Auburn automobile, and stated to him that his company had the same arrangements they had on two previous occasions with Mr. Regal to make credit reports. Prothro stated positively that Risner was the representative of the Finance Corporation of America, and this testimony is not denied. It appears that Prothro is the attorney for the appellant, representing it in this litigation both in the trial court and in this court.

It appears from other testimony that Regal and Prothro were the local representative and local credit reporting agent, respectively, living in Amarillo and representing the appellant. The office of Regal & Son was the appellant's office for all business transactions in Amarillo and surrounding territory, and its permanent records and files covering its transactions for two or three years were kept in that office. When sales were made by Austin, Regal as the representative of the company would sign the drafts given in payment for the cars and prepare chattel mort-

gages and see that they were duly filed with the county clerk. Regal as an insurance agent would issue policies covering the sold automobiles payable to the appellant company in accordance with prior arrangements made with the company. He signed the papers necessary to be executed in selling cars as the local representative of the appellant and had his son, young Regal, go to Austin's place when they first commenced dealing with Austin, and check up the cars on hand. Both Regal and Prothro had all the necessary blanks furnished them by the appellant, which blanks were distributed to car dealers and used in carrying on the business. Regal finally approved the papers evidencing the sales of cars sold by Austin, and the testimony tends strongly to show that the insurance company which Regal represented and in which the sold cars were insured was owned or controlled by the appellant company.

Prior to January 1, 1930, the approval of all deals was made at appellant's home office in Philadelphia. This was unsatisfactory to Austin, as it delayed the consummation of many of his sales, and the parties arranged that after January 1, 1930, approval of sales was to be made by Regal as local representative in Amarillo. Under the new arrangement, Regal prepared the papers in his office, including the chattel mortgages and insurance policies, and made drafts on the home office, and deals were immediately consummated, and he assumed the duty of seeing that the chattel mortgages were duly filed in the office of the county clerk.

The evidence further shows that many of the cars, including the one involved in this case, were repossessed by the appellant company and sold under the power of sale contained in the chattel mortgage, and that in such repossession and sale E. A. Regal, as the local representative of appellant, acted as appellant's agent. It further shows that about forty transactions similar to the one involved in this suit were consummated by the parties and under the circumstances disclosed here.

In our opinion, this testimony is sufficient to sustain the holding of the trial court to the effect that appellant was transacting and soliciting business in Texas, and had established a special office in Amarillo with local representatives in the prosecution of such business.

The third proposition is that agency cannot be proved by hearsay nor by parol testimony as to declarations made by an alleged agent nor by unauthorized acts or conduct on the part of such alleged agent.

This is an abstract proposition of law, and assigns no error committed by the trial court.

This is also true of the fourth proposition, by which it is asserted that the right to sue upon a transaction of interstate commerce is not lost by a showing that the corporation has been engaging, without having a permit, in other transactions of an intrastate character.

If these propositions were entitled to consideration, a sufficient answer thereto would be that the trial was before the court without a jury, and, while the record may show that some irrelevant and immaterial testimony was elicited, there is legal and competent testimony sufficient, aside from the statements of appellant's counsel made from the witness stand under oath, that appellant was transacting business contrary to R. S. art. 1529 et seq., and that under the express provision of article 1536 it was not entitled to maintain this suit.

The judgment of the trial court is therefore affirmed.