**Mike KUTKA, Plaintiff,**

v.

**TEMPORARIES, INC., Defendant.**

**Civ. A. No. H–82–2071.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 15, 1983.

C. Leland Hamel, Dickerson, Hamel, Early & Pennock, Houston, Tex., for plaintiff.

Stephen B. Hammerstein, Fidler & Hammerstein, Houston, Tex., Michael A. Schuchat, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

This is a diversity action for injunctive and declaratory relief brought pursuant to the Court's removal jurisdiction.[1] Plaintiff, Mike Kutka, the franchisee, is seeking to prevent defendant, Temporaries, Inc. (hereinafter TI), the franchisor, from terminating his franchise in El Paso, Texas.[2] TI has interposed a counterclaim, based upon an alleged breach of the franchise agreement. TI has asked the Court to declare the plaintiff in default of the franchise agreement, and further, it seeks an order to compel plaintiff to turn over the franchise to TI pursuant to the termination provisions of their agreement.

The Court issued a temporary restraining order on July 23, 1982, restraining TI from terminating plaintiff's franchise. The restraining order has been extended by agreement of the parties. On September 20, 1982, TI filed a motion for summary judgment and for dismissal of this action. On October 6, 1982, plaintiff filed his cross-motion for summary judgment. A hearing was held on November 29, 1982, to address the issues raised in the parties' cross-motions for summary judgment. Following a review by the Court of the pleadings, depositions, affidavits, and proposed findings of fact and conclusions of law, the Court requested the parties to submit supplemental briefs on several issues not sufficiently addressed in their earlier submissions. There being no genuine issue as to any material fact, this matter is properly determinable, to the extent discussed herein,[3] on the parties' cross-motions for summary judgment.

1. Plaintiff originally instituted this action in the District Court of Harris County, Texas, for the 215th Judicial District. The action was removed to this Court on July 23, 1982. None of the parties in interest properly joined and served as a defendant herein is a citizen of the state of Texas.

2. Defendant maintains that Kutka is not the real party in interest, because he assigned his interest in the franchise to Timothy Martin, Inc., and, thus, plaintiff lacks standing to bring this action. While it is true that plaintiff did assign his interest in the franchise to Timothy Martin, Inc., plaintiff owns ninety-five percent of the stock of Timothy Martin, Inc., and pursuant to paragraph 7(a) of the franchise agreement, and the assumption agreement entered into between TI and plaintiff, plaintiff agreed to remain liable to perform all of the obligations under the franchise agreement which forms the basis of this action.

This also bears upon plaintiff's obligations under paragraph 11(c) of the franchise agreement. It might well be argued that, absent these provisions, the only covenant not to compete which would apply to plaintiff is paragraph 7(d) pertaining to shareholders of the franchise.

3. Had TI sought to enforce paragraph 11(c) by injunction, a material fact issue would have been present regarding the extent of the territorial restraint reasonable under the circumstances to protect the interests of TI. Although the question of the reasonableness of a covenant

TI is a foreign corporation, incorporated under the laws of the District of Columbia, and has its principal office in the District of Columbia. TI is in the business of providing temporary office help to other businesses and organizations. It has twenty-nine offices throughout the United States, twenty-five branch offices and four franchise operations. In addition to plaintiff's franchise in El Paso, Texas, there are six branch offices located in Texas which are operated by a wholly owned subsidiary of TI called Temporaries, Inc., Texas.

On December 7, 1979, while employed as TI's southwest regional manager and vice president, plaintiff entered into a franchise agreement with TI (plaintiff had been employed by TI since 1970). The agreement granted plaintiff a license to operate a temporary help office in El Paso, Texas, using TI's trade name and methods of operation.

On December 7, 1981, plaintiff, with the approval of TI, assigned the El Paso franchise to Timothy Martin, Inc., a Texas corporation. Plaintiff owns ninety-five percent of the stock of Timothy Martin, Inc. The remaining five percent is owned by Ms. Gail Darling, the general manager of the El Paso franchise.

In March of 1982, plaintiff resigned his position as southwest regional manager and vice president of TI. In June of 1982, TI maintains that it received information that plaintiff was calling on customers in Houston, Texas, on behalf of Manpower Temporary Services of Houston, Inc. (hereinafter Manpower), a competitor of TI. Plaintiff confirmed this fact to TI's counsel, and further informed him that he would be formally employed by Manpower on July 1, 1982. On July 1, 1982, plaintiff became employed as a vice president and general manager of Manpower, having responsibility for the supervision of its five offices in the Houston area.[4] Plaintiff maintains that both before and after going to work for Manpower, he tried without success to find a qualified buyer for the El Paso franchise. By letter dated June 23, 1982, TI notified plaintiff that his activities on behalf of Manpower were in violation of the franchise agreement, and, if these activities continued, TI would exercise its right to terminate the franchise. On July 23, 1982, TI informed plaintiff that it was exercising its right to terminate the franchise.

TI contends that plaintiff has violated paragraph 11(c) of the franchise agreement, which provides as follows:

> Without the prior written consent of TI, LICENSEE shall not do business under any other name but TEMPORARIES INCORPORATED, nor engage in any other business than that licensed herein. The foregoing shall not be interpreted to prevent LICENSEE from making personal investments in other businesses which are not competitive to TEMPORARIES INCORPORATED, and which do not require any substantial time or attention by LICENSEE.

The main thrust of TI's argument is that paragraphs 11(b) and (c) were intended to operate as a provision requiring the franchisee to devote full-time and attention to the operation of the franchise, and as an in-term covenant not to compete, respectively. Further, TI maintains that amendment 1 to the franchise agreement, executed contemporaneously with the franchise agreement, which is a waiver of the full-time and attention provision of paragraph 11(b),[5] was only intended to relieve plaintiff

---

not to compete under Texas law is considered to be a question of law, *Lewis v. Krueger, Hutchinson, and Overton Clinic,* 153 Tex. 363, 269 S.W.2d 798 (1954); *Smith Protective Services, Inc. v. Robertson,* 560 S.W.2d 174 (Tex. Civ.App.—Houston [1st Dist.] 1977, no writ), the determination must be made in light of the facts which bear upon the extent of the restriction necessary to protect the interests of the covenantee, and the corresponding degree of hardship placed upon the covenantor. *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960).

**4.** Plaintiff's supplemental brief of July 15, 1983, states that plaintiff voluntarily resigned his employment with Manpower. This in no way moots the controversy, as TI still seeks to terminate the franchise pursuant to the earlier default.

**5.** Amendment 1 provides in pertinent part: "TI waives the obligation of LICENSEE to devote his full time and attention to the operation of the business herein so long as the license hereunder is owned by MIKE KUTKA or a corporation of which he has control."

of the requirement that he devote his full-time and attention to the El Paso franchise so that he could perform other duties for TI as its regional manager. TI maintains that by entering the employ of a competitor, while operating as a franchisee of TI, plaintiff has breached a material covenant of the franchise agreement, entitling TI to terminate the franchise pursuant to paragraph 15(c) of the agreement, and to buy back the franchise according to a formula set out in paragraph 16 of the agreement.[6]

■ Before discussing the material provisions of the agreement, two preliminary matters bear examination. Plaintiff maintains that TI, through its activities as franchisor of the El Paso, Texas, franchise, is "doing business" in the state of Texas, for purposes of *in personam* jurisdiction, and for the purpose of bringing into play article 8.18, Tex.Bus.Corp.Act Ann. (Vernon 1982). The Court agrees. The activities of TI in authorizing and acting in the establishment of the franchise in El Paso, Texas, and receiving franchise fees from the operation of the franchise, are sufficient for federal due process purposes and for purposes of the Texas long-arm statute.[7] *See* Hytken and Pelletier, *Doing Business in Texas: A Legal Briefing for the Incoming Franchisor,* 35 Tex.B.J. 23 (1972). The more troubling question is whether TI's failure to obtain a certificate of authority pursuant to article 8.18 precludes it from asserting its counterclaim in this Court.

■ Article 8.18 precludes a foreign corporation, which is transacting, or has transacted business in Texas, without a certificate of authority, from obtaining affirmative relief in the courts of Texas on any matter arising out of the transaction of intrastate business. This applies as well to a federal district court sitting in diversity. *Waggener Paint Co. v. Paint Distributors, Inc.,* 228 F.2d 111 (5th Cir.1955). The fail-

ure to obtain a certificate of authority does not impair the validity of the franchise agreement, nor does it prevent TI from defending this action. It does, however, preclude the granting of any affirmative relief on TI's counterclaim. *See Hightower Petroleum Corp. v. Story,* 236 S.W.2d 679 (Tex.Civ.App.—Fort Worth 1951, writ ref'd).

■ The determination of whether the character of the business and the nature of the transaction involved are intrastate or interstate must be decided on the facts of the individual case. *Ramsey v. Investors Diversified Services, Inc.,* 248 S.W.2d 263 (Tex.Civ.App.—Travis 1952, writ ref'd n.r.e.). Whether the contract is wholly performable in the state through a local representative is an important consideration. *Davis v. United Shoe Repairing Machinery Co.,* 92 S.W.2d 1107 (Tex.Civ.App.—Beaumont 1936, writ dism'd w.o.j.); *Alexander Film Co. v. Boxwell,* 56 S.W.2d 676 (Tex. Civ.App.—Amarillo 1933, no writ); *Finance Corp. of America v. Stone,* 54 S.W.2d 254 (Tex.Civ.App.—Amarillo 1932 no writ); *Motor Supply Co. v. General Outdoor Advertising Co.,* 44 S.W.2d 507 (Tex.Civ.App.—Texarkana 1931, no writ). Also, where the activities of a foreign corporation are at least in part of a local nature, the activity is intrastate and subject to regulation. *Normandie Oil Corp. v. Oil Trading Co.,* 139 Tex. 402, 163 S.W.2d 179 (1942); *Motor Supply Co.,* 44 S.W.2d at 506.

■ Determining the presence of the two factors necessitating the acquisition of a certificate of authority (i.e., (1) whether the party has transacted or does transact business in Texas, and (2) whether the transaction sued upon is intrastate in nature) is a factual matter, and therefore not ordinarily capable of resolution on motion for summary judgment. *Altheimer & Baer, Inc. v. Vergal Bourland Home Appliances,* 369

---

**6.** Paragraph 16 of the agreement basically provides that, upon termination of the franchise, TI will purchase the accounts receivable at ninety-five percent of their face value, and that TI will buy all furniture, fixtures, equipment, and leasehold improvements, at their depreciated value. Plaintiff maintains that as of September, 1982, TI would be required to pay approximately $65,000.00 under the default provi-

sion of the agreement. Further, plaintiff maintains that, under a typical method of valuation, the franchise has a value of between $300,000.00 and $500,000.00.

**7.** In any event, TI has made a general appearance sufficient for purposes of *in personam* jurisdiction.

S.W.2d 478 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n.r.e.). Here, however, even aside from TI's activities through its wholly owned subsidiary, Temporaries, Inc., Texas, there are sufficient undisputed facts to make such a determination. TI admits that it has not obtained a certificate of authority to transact business in Texas. TI has transacted, and is transacting business in Texas by: (1) its activities in authorizing and establishing the El Paso franchise; (2) receiving fees from the operation of the franchise; and (3) requiring the use of its name, forms, methods of operation, and advertising materials. Further, it is undisputed that the activities of the franchise are wholly local in nature—the providing of temporary office personnel to businesses in El Paso, Texas. Additionally, it is undisputed that the cause of action arose out of intrastate activities.[8] Thus, the Court finds that TI has transacted, and is transacting business within the state of Texas, and that the suit arose out of intrastate activities, within the meaning of Tex.Bus.Corp.Act Ann. art. 8.18 (Vernon 1982). Thus, the Court could not, in any event, grant affirmative relief to TI on its counterclaim until it obtains a certificate of authority from the State of Texas.[9]

▪ The second preliminary matter relates to the choice of law determination.

The franchise agreement contains a choice of law provision, stating that the agreement is to be interpreted and governed by the laws of the District of Columbia. Texas courts will enforce such an express choice of law provision in a contract, if the contract is shown to be reasonably related to the chosen state, and no countervailing public policy of the forum demands otherwise. *See Teas v. Kimball,* 257 F.2d 817 (5th Cir.1958); Pederson & Cox, *Choice of Law and Usury Limits Under Texas Law and the National Bank Act,* 34 Sw. L.J. 755, 766 (1980).

▪ Because TI, the franchisor, is a District of Columbia corporation, with its principal office in the District of Columbia, and franchise fees are paid to TI at its District of Columbia office, it would appear that the first prong of the test is satisfied. *See Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co.,* 642 F.2d 744 (5th Cir.1981). Thus, to the extent that District of Columbia law does not violate the public policy of Texas, the intent of the parties, as evidenced by the express choice of law provision, should be given effect.

▪ The parties, however, have briefed only Texas law, and assume that it governs the controversy.[10] The Court will, therefore, "follow the lead of the contracting parties," and apply Texas law.[11] *Aboussie*

8. The only cases directly on point, which the Court has located, were actions in which two Texas district courts held that foreign corporate franchisors, with franchises in Texas, were required to obtain a certificate of authority in order to seek affirmative relief in the Texas courts. In both actions the substantive question was not resolved on appeal. *See Troyan v. Snelling & Snelling, Inc.,* 524 S.W.2d 432 (Tex. Civ.App.—Dallas 1975, no writ); *Sizzler Family Steak Houses v. Nuss,* 444 S.W.2d 843 (Tex. Civ.App.—Houston [14th Dist.] 1969, no writ).

9. The Court may, however, decide the issue and, should affirmative relief be deemed appropriate, withhold the entry of final judgment until such time as a certificate of authority has been obtained. *See Troyan v. Snelling & Snelling, Inc.,* 524 S.W.2d 432 (Tex.Civ.App.—Dallas 1975, no writ).

10. The Court instructed the parties to submit supplemental briefs dealing, in part, with the current state of the law of the District of Columbia regarding the issues posed. The plain-

tiff's submission merely argues for the application of Texas law. TI's brief cites dictum from a single District of Columbia opinion. TI further maintains that "Texas law is not to the contrary" on the issues presented. (TI's supplemental brief at 4).

11. In the absence of an express choice of law provision in the contract, Texas law would apply. Under Texas conflicts law, where a contract is made in one state to be performed in another, the place of performance governs. *Ramirez v. Autobuses Blancos Flecha Roja, S.A.,* 486 F.2d 493 (5th Cir.1973); *Backar v. Western States Producing Co.,* 382 F.Supp. 1170 (W.D.Tex.1974).

Although it has been stated that, with respect to issues of validity and interpretation, the law of the state where the contract was made controls, where the place of performance is different from the place where the contract was made, the place of performance may control. *Dailey v. Transitron Overseas Corp.,* 349 F.Supp. 797 (S.D.Tex.), *aff'd,* 475 F.2d 12 (5th

v. *Aboussie,* 441 F.2d 150, 155 n. 6 (5th Cir.1971); *Gevinson v. Manhattan Construction Co. of Oklahoma,* 449 S.W.2d 458, 465 n. 6 (Tex.1969).

The contract in suit contains a number of different restrictive covenants. Paragraph 1(a) places an in-term restriction on TI, restraining the franchisor from granting another franchise or license to operate a temporary office help business in plaintiff's territory, El Paso County, Texas. Paragraph 7(d) is, in part, a shareholder restrictive covenant, containing an in-term restriction, and a one year post-term restriction on competitive activities with TI in the franchise territory. Paragraph 16(a) contains a one year post-term covenant not to compete within the franchise territory. Paragraph 17 is a duplicative one year post-term covenant not to compete. It states with greater particularity the activities restricted, and defines the scope of the geographic restriction (the meaning of franchise territory), as being a minimum area within a twenty-five mile radius of any of the licensee's places of business (apparently to cover the situation where there is more than a single franchise).

Paragraph 11 contains two provisions. Paragraph 11(b) is, among other things, a covenant requiring the licensee to devote full-time and attention to the operation of the franchise. The parties agree that amendment 1 to the agreement waived this provision, although they disagree as to the intended effect of the waiver.[12] Paragraph 11(c) is the controlling provision relied upon by TI for purposes of this action. As viewed by TI, it is an in-term covenant not to compete. The provision contains no territorial restriction. Beyond that point, the parties are in dispute.

Plaintiff maintains that paragraph 11(c) does not proscribe competitive activities. Alternatively, plaintiff maintains that, at the very least, the provision is ambiguous. Therefore, plaintiff contends, the issue can-

not be resolved on motion for summary judgment by the Court. Plaintiff further argues that, should the Court construe the provision as a covenant not to compete, it is void under Texas law due to the absence of a geographical restriction.

 Under Texas law, interpretation of an unambiguous contract, as well as the determination of whether a contract is ambiguous, is a legal question to be resolved by the Court. If it is determined that the contract is ambiguous, the actual intent of the parties becomes a question of fact. *Steuber Co., Inc. v. Hercules, Inc.,* 646 F.2d 1093 (5th Cir.1981); *Lee v. Hunt,* 631 F.2d 1171 (5th Cir.), *cert. denied,* 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1980); *Harris v. Rowe,* 593 S.W.2d 303 (Tex.1979). Thus, interpretation of the meaning of the contract, when the contract is not ambiguous, is a question of law. *Battig v. Hartford Accident & Indemnity Co.,* 608 F.2d 119 (5th Cir.1979). *Cf. Palmer v. Fuqua,* 641 F.2d 1146, 1154 n. 15 (5th Cir.1981). The language of the contract, unless ambiguous, manifests the intent of the parties. *Kimbell Foods, Inc. v. Republic National Bank of Dallas,* 557 F.2d 491 (5th Cir.), aff'd, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1977).

 The Court is of the opinion that, although the language of paragraph 11(c) lacks precision, the provision probably is not ambiguous in the legal sense. However, even if the language of paragraph 11(c) is ambiguous, the result would not be different. Under Texas law, the contract will be deemed ambiguous if, after applying established rules of interpretation to its language, it remains reasonably susceptible to more than one meaning. *Hennigan v. Chargers Football Co.,* 431 F.2d 308 (5th Cir.1970). The "standard of interpretation of an integration, except where it produces an ambiguous result ... is the meaning

---

Cir.1973); *First Commerce Realty Investors v. K–F Land Co.,* 617 S.W.2d 806 (Tex.Civ.App.— Houston [14th Dist.] 1981, writ ref'd n.r.e.) In any event, as discussed more fully *infra,* it appears that the law of the District of Columbia basically parallels that of Texas.

**12.** Nevertheless, the Court holds that the language of amendment 1 is clear and unambiguous, and is a waiver of paragraph 11(b); not as TI contends, only for so long as plaintiff remains in TI's employ.

that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and all the circumstances prior to and contemporaneous with the making of the integration. . . ." *Hennigan,* 431 F.2d at 315 *quoting, City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). Even assuming that the language forbidding the licensee to "engage in any other business than that licensed herein" is susceptible of more than one meaning, plaintiff's contention that paragraph 11(c) is no more than a full-time and attention provision is simply untenable, as it would render paragraph 11(c) completely redundant in view of paragraph 11(b). Had plaintiff engaged in some noncompetitive activity (using plaintiff's example: opening a shoeshine parlor), and TI invoked a breach under paragraph 11(c), it might be argued that the meaning of the language not to "engage in any other business" was only intended to proscribe competitive activities. Yet, under the facts of this case—because plaintiff has entered the employ of a competitor—and giving the plaintiff the benefit of the most favorable reasonable interpretation possible, his activities must come within the proscription of paragraph 11(c). *See Palmer,* 641 F.2d at 1154 n. 15. Thus, the Court holds that, at the very least—and therefore sufficient under the facts of this case—paragraph 11(c) clearly proscribes the franchisee from entering the employ of a competitor during the existence of the franchise. Further, a contractual clause must be read in context, and a reading of the entire provision supports such an interpretation. *See Friedrich v. Local No. 780, IUE,* 515 F.2d 225 (5th Cir.1975). After stating that the "LICENSEE shall not . . . engage in any other business than that licensed herein," this language is qualified by the following: "[t]he foregoing shall not be interpreted to prevent LICENSEE from making personal investments in other businesses *which are not competitive to TEMPORARIES, INCORPORATED,* and which do not require any substantial time or attention by LICENSEE." (emphasis added).

Regarding the absence of a territorial limitation in paragraph 11(c), plaintiff argues that since all the other anticompetitive provisions in the agreement contain a territorial limitation, confined to the franchise territory, paragraph 11(c) must also be so construed. The intent of the parties must be gleaned from a reading of the entire agreement. *Smith v. Liddell,* 367 S.W.2d 662 (Tex.1963). That is, "[e]ach provision must be given its reasonable, natural, and probable meaning when considered in relation to the whole, and each must be 'construed with reference to every other provision so that the effect of one upon the other may be obtained.'" *Hennigan,* 431 F.2d at 315 *quoting, Beaty v. Maritime Associations—I.L.A. Pension, Welfare & Vacation Funds,* 442 S.W.2d 823, 825 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd). And, under established canons of contract construction, a special or particular clause must prevail over a general one. *Western Oil Fields, Inc. v. Pennzoil United, Inc.,* 421 F.2d 387 (5th Cir.1970). Nevertheless, the Court cannot rewrite the contract for the parties. *Dedier v. Grossman,* 454 S.W.2d 231 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.); *Stalcup v. Eastham,* 330 S.W.2d 237 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r. e.).

In order for a court to read additional provisions into the contract, the implication must clearly arise from the language used, or be indispensible to effectuate the intent of the parties. It must appear that the implication was so clearly contemplated by the parties that they deemed it unnecessary to express it. *Danciger Oil & Refining Co. v. Powell,* 137 Tex. 484, 154 S.W.2d 632 (1941); *Calvin V. Koltermann, Inc. v. Underream Piling Co.,* 563 S.W.2d 950 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *Kingsley v. Western Natural Gas Co.,* 393 S.W.2d 345 (Tex.Civ. App.—Houston 1965, writ ref'd n.r.e.) The contract must stand as written, unless to do so would do violence to the manner in which the intent of the parties is expressed in the instrument as a whole. *Stalcup,* 330 S.W.2d at 239.

Generally, one who unconditionally obligates himself to do, or not to do, something possible of performance, must be held to his obligation, even though it may

be difficult, particularly where he might have foreseen the difficulty. *Calvin V. Koltermann, Inc.,* 563 S.W.2d at 958. A court cannot imply a contract term, absent the criteria stated above, in order to make the contract fair, or because in its absence the contract would be unwise, improvident, or would operate unjustly. *Danciger Oil & Refining Co.,* 154 S.W.2d at 635. Paragraph 11 relates to different circumstances than the other above-mentioned covenants not to compete. It cannot be said, with any degree of certainty, that a proscription against the franchisee engaging in other activities, during the term of the franchise, must have been intended to place no greater restriction than would be contemplated against a mere shareholder, or in a post-term restriction.

Whether paragraph 11(c) is valid under Texas law, and if so, to what extent, is a very different question. Generally, the same rules which govern the validity of other types of anticompetitive covenants are applicable to covenants incident to business franchise agreements. The position has been taken, that a franchise agreement is more akin to an employment contract than to a contract for the sale of a business, and, therefore, the stricter rules relating to the validity of covenants not to compete in employment contracts are looked to in determining the validity of a covenant not to compete in a franchise agreement. Annot., 50 ALR 3d 746 (1973).

 Texas follows the Restatement position, which is that a restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it is greater than is required for the protection of the person for whose benefit the restraint is imposed, or if it imposes undue hardship on the person restrained. The territorial extent of the restriction and the period of time for which the restriction is to last are important factors in determining its reasonableness.[13] *Weatherford Oil Tool Co. v. Campbell,* 161

Tex. 310, 340 S.W.2d 950, 951 (1960); RESTATEMENT (FIRST) OF CONTRACTS §§ 515–516 (1932). A restrictive covenant which contains no territorial limitation is unreasonable as written, and cannot be enforced in accordance with its terms. *Weatherford Oil Tool Co.,* 340 S.W.2d at 952. Paragraph 11(c) perhaps is impliedly limited in time to the term of the franchise, or any renewal thereof, but it is clearly without territorial limitation as it is written. Thus, paragraph 11(c) is unreasonable as written, and cannot be enforced in accordance with its term.

 TI, however, argues that the rules pertaining to standards of reasonableness regarding territorial and time limitations have no application where the covenant is an "in-term" restriction on competitive activities. TI relies principally on two Illinois cases to support this proposition: *Vendo Co. v. Stoner,* 105 Ill.App.2d 261, 245 N.E.2d 263 (1969) and *McDonald's System, Inc. v. Sandy's, Inc.,* 45 Ill.App.2d 57, 195 N.E.2d 22 (1963). The Illinois rule is clearly a minority position. Generally, courts examine covenants not to compete and enforce them to the extent that they are reasonable, without regard to whether they are in-term or post-term covenants. *Armstrong v. Taco Time International, Inc.,* 30 Wash.App. 538, 635 P.2d 1114 (1981). *See also Unishops, Inc. v. May's Family Centers, Inc.,* 399 N.E.2d 760 (Ind.App.1980); *Winrock Enterprises, Inc. v. House of Fabrics of New Mexico,* 91 N.M. 661, 579 P.2d 787 (1978); *Insurance Center, Inc. v. Taylor,* 94 Idaho 896, 499 P.2d 1252 (1972); *Fullerton Lumber Co. v. Torborg,* 270 Wis. 133, 70 N.W.2d 585 (1955); *John Roane, Inc. v. Tweed,* 33 Del. Ch. 4, 89 A.2d 548 (1952); *Irving Investment Corp. v. Gordon,* 3 N.J. 217, 69 A.2d 725 (1949). The Court has not been provided with, nor has it found, any Texas cases directly on point. The courts of Texas, however, follow the Restatement position, *Weatherford Oil Tool Co.,* 340 S.W.2d at 951, which requires reasonable-

---

**13.** The law of the District of Columbia seems to be in accord with that of Texas. *Chemical Fireproofing Corp. v. Krouse,* 155 F.2d 422 (D.C.Cir.1946); *National Chemsearch Corp. of N.Y. v. Hanker,* 309 F.Supp. 1278 (D.D.C.1970);

*Group Assoc. Plans, Inc. v. Colquhoun,* 292 F.Supp. 564 (D.D.C.), *vacated on other grounds,* 466 F.2d 469 (D.C.Cir.1972); *Meyer v. Wineburgh,* 110 F.Supp. 957 (D.D.C.1953).

ness for both in-term and post-term restrictions. RESTATEMENT (FIRST) OF CONTRACTS § 516 comment f (1932). The Texas courts have not suggested that reasonable time and area restrictions are not necessary for a covenant to be valid during the term of the business relationship. *Compare Cheese Shop International, Inc. v. Wirth,* 304 F.Supp. 861 (N.D.Ga.1969) (rejecting the Illinois rule under Georgia law).[14]

■■■■■ Although a territorial restriction in a covenant not to compete may be unreasonable as written, a court of equity, under Texas law, may reform the contract and enforce the restriction by injunction within an area deemed to be reasonable under the circumstances. *Weatherford Oil Tool Co.,* 340 S.W.2d 952; *Justin Belt Co., Inc.,* 502 S.W.2d at 685. However, this applies to injunctive relief only. Where damages are sought for the breach of a covenant not to compete, the contract must stand or fall as written. *Weatherford Oil Tool Co.,* 340 S.W.2d at 953. The rationale espoused by the Texas Supreme Court for this rule is that, where such a covenant is unlimited as to either time or territory, the covenantor cannot be held liable for damages prior to a judicial declaration of the rights and obligations arising under the contract. In short, only prospective relief is warranted, for the legal obligations are not fixed until the unreasonable restriction has

been reformed by the court. *See Weatherford Oil Tool Co.,* 340 S.W.2d at 952–53.

■■■ While TI argues that it does not seek damages against plaintiff, but seeks instead to terminate the franchise by virtue of plaintiff's breach of paragraph 11(c), the Court is of the opinion that TI would only be entitled to prospective injunctive relief. What TI seeks is in the nature of a forfeiture. "A forfeiture is the loss of some right, property, privilege, or benefit, in consequence of having done, or omitted to do, a certain act." 25 Tex.Jur.2d Forfeitures § 1 at 500 (1961). Forfeiture means a loss in consequence of breach of contract. *Grindstaff v. Mather,* 186 S.W.2d 364 (Tex.Civ. App.—Amarillo 1945, writ ref'd w.o.m.). For the same reason that it would be inappropriate to award damages for breach of an unreasonably broad covenant not to compete, prior to judicial reformation, it would be equally inappropriate to permit a forfeiture. And, the Texas Supreme Court has so held. *Frankiewicz v. National Comp Associates,* 633 S.W.2d 505, 507–08 (Tex.1982). *See also Peat, Marwick, Mitchell & Co. v. Sharp,* 585 S.W.2d 905 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Southwestern Bell Telephone Co. v. Gravitt,* 551 S.W.2d 421 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.).[15]

Thus, because paragraph 11(c) contains no territorial limitation, it cannot provide a valid basis for TI to terminate plaintiff's

---

**14.** The sole District of Columbia case cited by TI contains some language which makes the in-term/post-term distinction. This language, however, is clearly dictum. *See Saul v. Thalis,* 156 F.Supp. 408, 411 (D.D.C.1957). Further, even if this case was being decided under District of Columbia law, and even if the courts of the District of Columbia clearly embraced the Illinois rule, such a rule, the Court believes, would be contrary to the stated public policy of Texas—to enforce covenants in restraint of trade only to the extent that they are reasonable. *Frankiewicz v. National Comp. Assoc.,* 633 S.W.2d 505 (Tex.1982); *Justin Belt Co., Inc. v. Yost,* 502 S.W.2d 681 (Tex.1974).

**15.** *But cf. Dollgener v. Robertson Fleet Services, Inc.,* 527 S.W.2d 277 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) (allowing forfeiture of all interest in a pension plan entirely funded by the employer, for violation of a restrictive covenant, unlimited as to time or

area). The *Dollgener* decision is limited to a situation involving pension plan benefits, wholly funded by the employer, and nonaccrued. *Peat, Marwick, Mitchell & Co.,* 585 S.W.2d at 908. Further, this decision has been criticized. *Southwestern Bell Telephone Co.,* 551 S.W.2d at 426–28. In any event, the subsequent *Frankiewicz* decision is clearly controlling.

Beyond the rationale espoused by the Texas Supreme Court for refusing to allow retrospective relief, whether in the form of damages or a forfeiture, there are other reasons why such a remedy might be inappropriate. In order for a covenant not to compete to be enforceable, it must be reasonably necessary to protect the interest of the covenantee, and not unduly burdensome to the covenantor. It might well be argued that such a forfeiture remedy is merely a penalty, is not designed to protect the interest of the franchisor, and is unduly burdensome to the franchisee.

franchise any more than it could support a claim for damages. Plaintiff is therefore entitled to an injunction prohibiting TI from terminating the franchise based upon a breach of paragraph 11(c) of the franchise agreement. As discussed previously, a court under Texas law, may reform an unreasonably overbroad territorial restriction in a covenant not to compete, and provide appropriate injunctive relief restricting competitive activities in an area determined to be reasonable under the circumstances. Such a determination would require further factual development. TI, however, has chosen not to seek injunctive relief. (TI's opposition to plaintiff's motion for summary judgment at 2).

For the reasons stated above, the Court hereby ORDERS:

1. Plaintiff's motion for summary judgment is GRANTED;

2. Temporaries, Inc., defendant and counter-plaintiff herein, is hereby enjoined from taking any action to terminate plaintiff's franchise based upon a breach of paragraph 11(c) of the franchise agreement; and

3. Defendant's cross-motion for summary judgment is hereby DENIED.

4. This is a FINAL JUDGMENT.