**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 11, 2004**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-20849
_____


TEAL ENERGY USA, INC,

                                        Plaintiff - Appellant,

versus

GT, INC.,

                                        Defendant - Appellee.

_____
GT, INC.

                                        Plaintiff - Appellee

versus

TEAL ENERGY USA, INC.; ET AL

                                        Defendants

TEAL ENERGY USA, INC.

                                        Defendant - Appellant.


                    ---------------------
            Appeal from the United States District Court
                for the Southern District of Texas
                    ---------------------

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

WIENER, Circuit Judge:

    Plaintiff-Appellant Teal Energy USA, Inc. ("Teal USA") appeals

from an order dismissing for lack of subject matter jurisdiction

its suit against Defendant-Appellee GT, Inc. ("GT").  We affirm.

## I. BACKGROUND

Teal USA, a Delaware corporation, is a wholly-owned subsidiary of Teal Energy, Inc., a Canadian corporation based in Calgary. Teal USA conducts oil and gas investment activities in the United States. Its only domestic office is located in Houston, Texas. GT is a Nevada corporation that supplies seismic information and funding for land acquisition. It conducts its business from an office located in Houston, Texas.

In January 1999, Teal USA entered into a joint venture with GT to develop an oil and gas area in southern Texas known as the East Mission Prospect. The joint venture agreement required GT to supply seismic information and funding for land acquisition. It required Teal USA to acquire leases for the property and to arrange farm-out agreements with third parties to drill wells on the property.

In November 2001, GT filed suit in the state district court of Hidalgo County, Texas seeking a temporary restraining order and temporary injunction related to a farm-out agreement executed between Teal USA and a third party. The following day, Teal USA filed suit in the United States District Court for the Southern District of Texas against GT for breach of the joint venture agreement, asserting diversity of citizenship under 28 U.S.C. § 1332 as the basis for federal jurisdiction. Teal USA timely removed the Hidalgo County action to federal court pursuant to 28

U.S.C. § 1441(a), also on the basis of diversity.  The two cases were then consolidated into a single action.  The case was assigned to a magistrate judge after both parties consented to trial before her.

Early the next year, GT filed a motion to dismiss Teal USA's action and to remand the removed action on the grounds that complete diversity of citizenship did not exist between the parties so that the district court lacked subject matter jurisdiction over the action.[1]  Specifically, GT alleged that, as both GT and Teal USA had their principal places of business in Texas, both were citizens of Texas for diversity purposes.  The district court agreed, and, in a written Memorandum and Order, severed the two actions, dismissed Teal's claims against GT without prejudice, and remanded the removed action to state court.  Teal USA timely filed a notice of appeal.  As the portion of the court's order remanding the Hildago County action is non-reviewable,[2] we review the order only insofar as it dismisses Teal USA's federal action for lack of subject matter jurisdiction.

## II. STANDARD OF REVIEW

---

[1] FED. R. CIV. PRO. 12(b)(1).

[2] 28 U.S.C. § 1447(d).

3

The district court found that both Teal USA's and GT's principal places of business were in Texas. We review these factual determinations for clear error.[3]

## III. LAW AND ANALYSIS

Section 1332(a) provides that a corporation is a citizen of both its state of incorporation and the state of its principal place of business for purposes of diversity jurisdiction.[4] Teal USA argues that the court erred in finding that the situs of its principal place of business was Texas rather than Canada. Additionally, it argues that the court erred in determining that GT's principal place of business was Texas, as GT was not authorized to transact business in Texas at the time that Teal filed its federal lawsuit.[5]

We apply the "total activity" test to determine a corporation's principal place of business.[6] This test requires us to consider two "focal points:" the location of the corporation's

---

[3] See J.A. Olson Co. v. City of Winona, Miss., 818 F.2d 401, 412 (5th Cir. 1987).

[4] 28 U.S.C. § 1332(a).

[5] The existence of diversity jurisdiction is determined at the time suit is filed. See Harris v. Black Clawson Co., 961 F.2d 547, 549 (5th Cir. 1992).

[6] See Grinter v. Petroleum Operation Support Serv., 846 F.2d 1006, 1008 (5th Cir. 1988)(citing J.A. Olson, 818 F.2d at 404; Toms v. Country Quality Meats, Inc., 610 F.2d 313, 315 (5th Cir. 1980); Village Fair Shopping Ctr. Co. v. Sam Broadhead Trust, 588 F.2d 431, 434 (5th Cir. 1979)).

4

"nerve center" and its "place of activities."[7]  We must examine the totality of the facts, including the corporation's organization and the nature of its activities, to determine which of these focal points predominates.[8]  Generally, "when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business . . ., when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant . . . , but when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance . . . ."[9]

## A. Teal USA's Principal Place of Business[10]

Teal USA asserts that the situs of its principal place of business is not Texas, as determined by the district court, but Canada, where its executive offices are located.  To this end, Teal USA notes that its shareholders and directors meetings are held in Calgary, its president and corporate accountants reside in Calgary, and all major decisions related to the corporation are made in Calgary.  Teal USA also notes that its corporate minutes reflect

---

[7] See J.A. Olson, 818 F.2d at 406 (cites omitted).

[8] See id.

[9] Id. at 411.

[10] The parties do not dispute that Teal USA, as a Delaware corporation, is a citizen of Delaware for diversity purposes.

that Calgary was established as the headquarters and official office of Teal USA, and that, according to the deposition testimony of Allen Knight, Teal USA's president, Calgary was chosen as the corporation's principal office out of a desire to avoid what its officers' perceived to be an unjust Texas state court system.

The court accepted these facts as uncontroverted and found that Calgary was indeed the "nerve center" of Teal USA. This evidence was not enough, however, to satisfy the court that Calgary was also Teal USA's principal place of business. Citing the affidavit of Teal USA's former vice-president and current director, John Glenn, the court noted that all of the revenue Teal USA earned in 2001, the year in which suit was filed, was derived from Teal USA's Texas oil and gas operations. The court further observed that, despite Glenn's statement that Teal USA "reviewed, investigated, and seriously considered" proposals involving land development in several other states, the corporation put forth no evidence that it actually engaged in operations in any state other than Texas. As Teal USA did not establish that it engaged in "far-flung" and varied activities in different states, the court reasoned that the "nerve center" did not predominate in determining its principal place of business.[11]

---

[11] J.A. Olson, 818 F.2d at 407("'Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center . . .'")(citing Scot Typewriter, 170 F. Supp. at 865 (footnote omitted)).

Turning to Teal USA's "place of activity," the court considered first the deposition testimony of Gordon Andrus, a shareholder of Teal Canada.[12] Andrus testified that Teal USA was established to pursue Texas oil and gas prospects and that its only oil and gas operations were located in Texas. Additionally, Andrus testified that all of Teal USA's business assets and accounting records were in Texas, its day-to-day operations were conducted in Texas, and the only two wells that Teal USA had arranged to have drilled were located in Texas.

The district court also noted that Glenn was one of Teal USA's two principal officers, and he resided in Houston, Texas, as did two of the corporation's three directors and all of its employees. Finally, the court observed that Teal USA's filings with the Secretary of State of Delaware and with the Internal Revenue Service specified the Houston office address as the corporation's principal place of business. Considering the weight of this evidence, as well as Teal USA's failure to produce any substantial controverting evidence, the court concluded that the place of corporate activity was Texas. It then held that the situs of Teal USA's principal place of business was Texas, noting that, "[u]nder the total activity test, a corporation . . . with significant

_____

[12] Teal USA attempts to discredit Andrus's testimony by showing that Andrus himself is not a shareholder of Teal Canada. His deposition testimony, however, establishes that he and his family formed a Texas limited liability corporation and that this corporation is a shareholder of Teal Canada. We find this distinction immaterial.

administrative authority and activity in one state and lesser executive offices but principal operations in another state has its principal place of business in the latter."[13]

We hold that the district court's determination was not clearly erroneous. Although Teal USA argues that the court erred in finding that its activities were not "far-flung" and widely dispersed across several states, it cites to only one consummated business transaction that occurred outside of Texas — its acquisition of a two-percent overriding royalty interest from a natural gas company in Louisiana. This is not enough, in our view, to warrant a finding that Teal USA's operations were "far-flung"

_____

[13] We observe that the district court correctly quoted Petrobas American v. TDC Energy Corp. for this proposition, but that the Petrobas court, in citing J.A. Olson, inadvertently transposed the phrases "the latter" and "the former." See 205 F. Supp. 2d 703, 705 (S.D. Tex. 2002)("Under the total activity test, a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state has its principal place of business in the latter.")(citing J.A. Olson, 818 F.2d at 408)(emphasis added); compare J.A. Olson, 818 F. 2d at 409("the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former.")(cites omitted)(emphasis added). Nevertheless, this clerical error in transposition does not affect our conclusion today that the district court's determination of Teal USA's principal place of business was not "clearly erroneous," as our review of the record and the court's well-reasoned opinion shows that it correctly applied the total-activity test to the facts before it. See J.A. Olson, 818 F.2d at 411("when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant")(cites omitted).

for purposes of application of the total activity test.[14] Accordingly, we conclude that the court did not "misapply" that test as Teal USA contends.

We are equally unpersuaded by Teal USA's evidentiary challenges to the court's discrete factual findings. Specifically, Teal USA argues that Andrus's deposition testimony was not credible, citing two passages of his deposition in which he admits that he might be wrong about the location of some of the corporation's activities. It suffices to say that these concessions, viewed in context, do not render the district court's reliance on Andrus's testimony clearly erroneous. Besides, credibility calls are the unique province of the trial judge.

Teal USA also argues that the court erred in relying on the corporation's filings with the Secretary of State of Delaware and the IRS, as these documents were unauthenticated. Although our review of the record confirms Teal USA's assertion that these

---

[14] Teal USA also describes its corporate activities as "passive" in an attempt to analogize its case to our decision in Village Fair Shopping Ctr. Co. v. Sam Broadhead Trust. See 588 F.2d 431 (5th Cir. 1979)(corporation's principal place of business was its nerve center because its investments in other states, although of significant value, were "passive" in nature); see also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164 (5th Cir. 1998)(same). In Village Fair, however, all executive and policy decisions were made in the corporation's nerve center, and its only corporate activity outside the nerve center was in the form of real estate investments. See 588 F.2d at 434. By contrast, Teal USA's corporate activity, i.e., conducting geological evaluations, acquiring real estate, and securing farm-out agreements, is, in Teal USA's own words, "labor-intensive." (Appellant brief at 17) Accordingly, Teal USA's reliance on Village Fair as a factually analogous case is misplaced.

documents were not authenticated, we are convinced that enough evidence exists to support the court's determination of Teal USA's principal place of business, so that any reliance on these filings does not render that ultimate determination clearly erroneous.[15]

In sum, Teal USA's evidentiary challenges are unavailing.[16] As the weight of the evidence shows that Teal USA is not a far-flung corporation, and that its corporate activities take place almost entirely in Texas where one of its principal officers, two of its three directors, and all of its employees are located, we affirm the district court's ruling that Teal USA's principal place of business for diversity purposes is in Texas.[17]

## B. GT's Principal Place of Business

Finding that GT's corporate headquarters were located in Houston, Texas, that all of its assets and officers were located in Texas, and that it derives all of its revenues from Texas operations, the district court concluded that GT's principal place of business was in Texas. Despite adducing no evidence that would indicate that GT conducts business in any state other than Texas,

---

[15] Teal USA also lodges an evidentiary challenge to the declaration of GT's president, Felix Moreno. As the magistrate judge did not rely on Moreno's declaration in making its determination of Teal USA's principal place of business, we do not address this argument.

[16] "[T]he party invoking federal jurisdiction bears the burden of proof if diversity is challenged." Village Fair, 588 F.2d at 433 (citing Ray v. Bird & Son & Asset Realization Co., 519 F.2d 1081 (5th Cir. 1975)).

[17] J.A. Olson, 818 F.2d at 409 (cites omitted).

Teal USA nevertheless asserts that GT's principal place of business could not have been Texas because GT did not obtain a certificate of authority from the Texas Secretary of State to transact business in that state until December 2002. This, insists Teal USA, means that GT was not authorized to conduct intrastate business at the time suit was filed.[18]

Article 8.01 of the Texas Business Corporation Act provides that "[n]o foreign corporation shall have the right to transact business in [Texas] until it shall have procured a certificate of authority to do so from the Secretary of State."[19] Under article 8.18, foreign corporations that have not obtained a certificate of authority are barred from maintaining any action, suit or proceeding in any [Texas state court] . . . on any cause of action arising out of the transaction of business in [Texas] . . . ."[20] They are not, however, precluded from <u>defending</u> any such action or proceeding in Texas state court.[21] Although we have yet to consider whether a corporation can have its principal place of business for

---

[18] Additionally, Teal USA argues, for the first time in its reply brief, that insufficient evidence exists to support the magistrate judge's finding that GT's principal place of business was in Texas. We do not consider this argument, as arguments raised for the first time in a reply brief are waived. See City of Abilene v. United States Envtl. Prot. Agency, 325 F.3d 657, 661 n.1 (5th Cir. 2003).

[19] TEX. CORPS. & ASS'NS CODE ANN. § 8.01 (Vernon 2003).

[20] Id. § 8.18.

[21] See id. § 8.18(B).

diversity purposes in a state in which it is not authorized to do business, our precedent and, more importantly, the basic tenets of federal jurisdiction, dictate that the answer to this question is necessarily in the affirmative.

Our diversity cases have consistently held that the determination of a corporation's principal place of business is a fact-intensive inquiry that can only be made after considering the totality of the corporate existence.[22]  It stands to reason that no single factor, including a corporation's adherence <u>vel</u> <u>non</u> to a particular state's regulatory requirements for conducting business within that state, is determinative.  Our decision in <u>Village Fair Shopping Center v. Sam Broadhead Trust</u> well-illustrates this point.[23]  The issue in <u>Village Fair</u> was whether, for diversity purposes, the principal place of business of a corporate partner of the defendant-partnership was in New York, where its executive offices were located, or in Mississippi, where it had its largest real estate investment.[24]  In deciding this question, we considered a number of factors including, <u>inter</u> <u>alia</u>, the relative values of the corporation's assets in New York and Mississippi, the nature of the corporate activity in those states, and the degree of control

---

[22] <u>See</u>, <u>e.g.</u>, <u>Grinter</u>, 846 F.2d at 1008 (5th Cir. 1988); <u>J.A. Olson</u>, 818 F.2d at 405-06; <u>Village Fair</u>, 588 F.2d at 434.

[23] <u>See</u> 588 F.2d 431 (5th Cir. 1979).

[24] <u>See</u> <u>id.</u> at 432-33.

12

over the corporation's affairs exercised by the New York office.[25] We noted in passing that the corporation's "only other Mississippi contact," aside from its sizeable real estate holdings, was "the fact that it [wa]s qualified to do business in the state."[26] We further observed that there was nothing in the record "indicat[ing] that the corporation [wa]s similarly qualified to do business in New York."[27] This ambiguity with respect to the corporation's authority to conduct business in New York did not, however, factor heavily into our decision: Finding that the corporate activity occurring in New York significantly outweighed the activity occurring in Mississippi, we held that New York was the situs of the corporation's principal place of business.[28]

Although Teal USA correctly observes that in Village Fair we did not know with certainty whether the corporation was licensed to do business in the state in which it claimed to have its principal place of business (New York), that fact is immaterial. As our analysis in Village Fair makes pellucid, however, whether a corporation is licensed to conduct business in a particular state, far from being dispositive, is but one of several factors that must

---

[25] See id. at 434.

[26] Id. at 433.

[27] Id.

[28] See id. at 434-35.

13

be considered in determining a corporation's principal place of business.

Neither could it be otherwise. What constitutes citizenship for diversity purposes is a matter of federal law, and as such, cannot be made to depend on the particular nuances of the various state business codes.[29] A contrary rule would not only run afoul of § 1332's statutory mandate —— which states that a corporation shall be deemed a citizen of the state of its <u>principal</u> <u>place</u> <u>of</u> <u>business</u> without regards to whether it is <u>authorized</u> to do business in that state[30] —— but would elevate form over substance, allowing a corporation either to create or thwart diversity jurisdiction by the single expedient of not complying with state business

---

[29] <u>See</u>, <u>e.g.</u>, <u>Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt.</u>, 316 F.3d 408, 411 (3d Cir. 2003)(The"[m]aintaining [of] corporate trappings or the qualifications required to potentially conduct business" in a state, without actual evidence of business activity occurring in the state, is not enough to warrant a finding that the state is corporation's principal place of business for diversity purposes); <u>Union Pac. R.R. Co. v. 174 Acres of Land Located in Crittenden County</u>, 193 F.3d 944, 945-46 (8th Cir. 1999)(foreign railroad's compliance with state domestication statute making it a railroad of that state "the same as if it was formally incorporated in th[at] state" did not also make the railroad a "citizen" of that state for diversity jurisdiction purposes; "[d]iversity jurisdiction is a question of federal law").

[30] 28 U.S.C. § 1332(a); <u>see</u> <u>also</u> <u>Amer. Motorists Ins. Co. v. Amer. Employers' Ins. Co.</u>, 600 F.2d 15, 16 (5th Cir. 1979)(per curiam)(not sufficient for diversity purposes that plaintiff's complaint asserts that defendant corporation is "licensed to do business and doing business in Louisiana;" citizenship of corporate parties under § 1332 is determined by the state of incorporation and the state where corporation has its principal place of business).

14

regulations. Such a result cannot be justified. Accordingly, we hold today that a corporation's failure to comply with the state law requirements for conducting business in that particular state will not preclude a finding that the corporation has its principal place of business in that state for purposes of diversity jurisdiction; such failure is but one of many factors for that calculus.

Our holding today is not at odds with the Supreme Court's decision in <u>Woods v. Interstate Realty Company</u> or our prior ruling in <u>Waggener Paint Co. v. Paint Distributors, Inc.</u>.[31] The plaintiff in <u>Woods</u>, a Tennessee corporation conducting business in Mississippi, filed suit against a Mississippi resident in federal court in Mississippi on the basis of diversity.[32] The Mississippi resident filed a motion to dismiss on the grounds that the corporation had not complied with a Mississippi statute requiring foreign corporations to designate an agent for service of process.[33] Noting that the statute prohibited foreign corporations from <u>filing suit</u> in state court unless they had complied with its provisions, the Supreme Court held that the corporation was barred from maintaining its suit in federal court on the basis of diversity.[34]

---

[31] <u>See</u> 337 U.S. 535 (1949); 228 F.2d 111 (5th Cir. 1956).

[32] <u>See</u> <u>Woods</u>, 337 U.S. at 535-36.

[33] <u>See</u> <u>id.</u>

[34] <u>See</u> <u>id.</u> at 538.

15

In so holding, the Court stated that "a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; . . . where [a party] is barred from recovery in the state court, he should likewise be barred in the federal court."[35]

Similarly, the plaintiff in Waggener, a Missouri corporation with its principal place of business in that state, filed suit in federal court in Texas against a Texas resident with jurisdiction based on diversity.[36] The Texas resident filed a motion to dismiss the plaintiff's claim, asserting that the plaintiff had failed to obtain a certificate permitting it to transact business in Texas, as required by state law.[37] We reversed the district court's dismissal order, noting that the Texas statute only applied to intrastate transactions and that the transaction in question was interstate in nature.[38] We observed, however, that the district court would have been correct in granting the motion to dismiss had the transaction been intrastate, citing Woods for the proposition that "a state may deny a foreign corporation access to its courts for suits arising out of intrastate business where that business has been done without conforming to, or in violation of, a state

---

[35] Id.

[36] See Waggener Paint Co., 228 F.2d at 112.

[37] See id.

[38] See id. at 113.

16

statute, and that where a state court is not open to such a suit, a federal court will not be."[39]

These cases — pre-dating the 1958 amendment to the Judicial Code which added that a corporation is to be deemed a citizen of both its state of incorporation and its "principal place of business"[40] — stand only for the proposition that when a local law precludes a party's recovery in state court, that party is likewise barred from pursuing its action in diversity in the federal courts situated in that state. Their holdings thus reflect the basic principle of Erie that a federal court sitting in diversity is bound to apply the law of the state in which it sits;[41] they do not imply that the determination of a party's citizenship for diversity purposes is governed by state law. Thus, for example, a foreign corporation conducting business in Texas without a certificate of authority from the Texas Secretary of State will be barred, under Article 8.18, from filing suit in either Texas state court or in a federal court sitting there in diversity, on any matter related to its intrastate business activity,[42] irrespective of whether the

---

[39] Id. (citing Woods, 337 U.S. at 536).

[40] 1958 Amendment, Act of July 25, 1958, § 2, 72 Stat. 415.

[41] Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)("Except in matters governed by the Federal Constitution or acts of Congress, the law to be applied in any case is the law of the state.").

[42] Article 8.18 has been interpreted as prohibiting an unauthorized foreign corporation from filing suit in Texas court on any matter arising out of the transaction of intrastate business

17

totality of its corporate activity indicates that its principal place of business is Texas.  In such circumstances, a federal forum is foreclosed, not because of the absence of complete diversity, but because a federal court applying Texas law would necessarily conclude that it lacked authority to entertain the action.

In contrast, GT's failure to obtain a certificate of authority prior to the institution of Teal USA's federal lawsuit does not implicate article 8.18's limitation on the remedies available to unlicensed foreign corporations transacting intrastate business in Texas because:  As the district court aptly noted, GT is the <u>defending</u> party.  As Article 8.18 explicitly provides that the failure to obtain a certificate of authority will not prevent  an unlicensed corporation from "defending any action, suit or proceeding in any court of this State," the district court was correct in ruling that the statute was not determinative of federal jurisdiction.

## III. CONCLUSION

We hold that the magistrate judge did not clearly err in determining that both Teal USA and GT were citizens of Texas for purposes of complete diversity, prohibiting federal jurisdiction.

---

only.  <u>See</u> <u>Kutka v. Temps., Inc.</u>, 568 F. Supp. 1527, 1532 (S.D. Tex. 1983); <u>Collins v. Hardeman-King Co.</u>, 74 S.W.2d 181, 182 (Tex. Civ. App. 1934).

Accordingly, we affirm the magistrate judge's dismissal of Teal USA's action against GT for lack of subject matter jurisdiction. AFFIRMED.